UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| BRIAN ADAMS, *et al.*, | ) | No. 7:21-CV-00082-REW-CJS |
| JAMIE BANKS, *et al.*, | ) | No. 7:21-CV-00083-REW-CJS |
| BARM COMBS, *et al.*, | ) | No. 7:21-CV-00084-REW-CJS |
| CARTER YATES, *et al.*, | ) | No. 7:21-CV-00085-REW-CJS |
| CHARLES MOUNTS, *et al.*, | ) | No. 7:21-CV-00086-REW-CJS |
| KENNETH HAMILTON, *et al.*, | ) | No. 7:21-CV-00087-REW-CJS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 3M COMPANY, *et al.*, | ) | OMNIBUS OPINION & ORDER |
| | ) | |
| Defendant. | | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

## I.    INTRODUCTION

The Court will rule on the following six motions to remand in an omnibus order: Brian

Adams, et al. v. 3M Company, et al. (7:21-cv-82-REW-CJS; DE 22); Jamie Banks, et al. v. 3M

Company, et al. (7:21-cv-83-REW-CJS; DE 28); Barm Combs, et al. v. 3M Company, et al.

(7:21-cv-84-REW-CJS; DE 26); Carter Yates, et al. v. 3M Company, et al. (7:21-cv-85-REW-

CJS; DE 29); Charles Mounts, et al. v. 3M Company, et al. (7:21-cv-86-REW-CJS; DE 28);

Kenneth Hamilton, et al. v. 3M Company, et al (7:21-cv-87-REW-CJS; DE 23). The same

attorneys represent each plaintiff roster across these six actions. The Defendants are the same in

each case, are represented by the same attorneys in each case, and removed each case on the

same day.[1] Further, the Plaintiffs' motions to remand present largely identical subject matter

---

[1] *Adams* (7:21-cv-82-REW-CJS; DE 1); *Banks* (7:21-cv-83-REW-CJS; DE 1); *Combs* (7:21-cv-24-REW-CJS; DE 1); *Yates* (7:21-cv-85-REW-CJS; DE 1); *Mounts* (7:21-cv-86-REW-CJS; DE 1); *Hamilton* (7:21-cv-87-REW-CJS; DE 1).

jurisdiction issues and arguments. In fact, the Memorandum of Law and all exhibits that were filed in the Adams Motion to Remand (7:21-cv-82-REW-CJS; DE 22 (Motion and Exhibits), DE 23 (Memorandum of Law)) were compressed into a single file and attached as an exhibit to each of the other cases' motions to remand. Similarly, 3M filed the same responses in opposition to each motion to remand,[2] and the plaintiffs filed identical reply briefs to each of those six responses.[3] Therefore, in the interest of judicial efficiency, and following the parties' integrated approach in motion practice, the court will issue an omnibus order.

## II.   BACKGROUND

The plaintiff roster in each case is composed of persons that worked as coal miners (or were the spouses of coal miners) in various counties within the Commonwealth of Kentucky. Complaint ¶¶ 1, 2.[4] Each mining plaintiff is either a citizen of Kentucky or spent a substantial part of his or her mining career in Kentucky. *Id.* ¶ 2. Plaintiffs allege that they were exposed to dust (coal, rock, or sand) on the job and, because of the failure of respirators and dusk masks manufactured or sold to them by Defendants ("Respirators"), suffer from occupational lung diseases and other injuries. *Id.* ¶ 1. Defendants in this case are split into two categories: distinct

---

[2] *Adams* (7:21-cv-82-REW-CJS; DE 25); *Banks* (7:21-cv-83-REW-CJS; DE 30); *Combs* (7:21-cv-24-REW-CJS; DE 28); *Yates* (7:21-cv-85-REW-CJS; DE 31); *Mounts* (7:21-cv-86-REW-CJS; DE 30); *Hamilton* (7:21-cv-87-REW-CJS; DE 25).

[3] *Adams* (7:21-cv-82-REW-CJS; DE 29); *Banks* (7:21-cv-83-REW-CJS; DE 34); *Combs* (7:21-cv-24-REW-CJS; DE 32); *Yates* (7:21-cv-85-REW-CJS; DE 35); *Mounts* (7:21-cv-86-REW-CJS; DE 34); *Hamilton* (7:21-cv-87-REW-CJS; DE 29).

[4] *Adams* (7:21-cv-82-REW-CJS; DE 22-7, Page ID 833–883 ); *Banks* (7:21-cv-83-REW-CJS; DE 1-1, Page ID 50–79); *Combs* (7:21-cv-24-REW-CJS; DE 1-1, Page ID 83–108); *Yates* (7:21-cv-85-REW-CJS; DE 1-1, Page ID 41–67); *Mounts* (7:21-cv-86-REW-CJS; DE 1-1, Page ID 158–90); *Hamilton* (7:21-cv-87-REW-CJS; DE 1-1, 192–216). The Complaints in each case are harmonious with and allege the same theories as the others. The only differences between the Complaints are the plaintiffs listed and the cited county for mining activity in each action, though Pike County is a shared allegation for three of the actions.

Manufacturer Defendants[5] and distinct Supplier Defendants[6]. Manufacturer Defendants manufactured the various Respirators. *Id.* ¶ 18. Supplier Defendants then sold the Respirators to some of Plaintiffs' employers for Plaintiffs' use while they were working coal mining jobs. *Id.* Quite notably, the Complaint is bereft of details regarding when Plaintiffs experienced exposure, where they experienced exposure, what Respirator any specific Plaintiff wore, the identity of employers, and the identity of a Supplier Defendant linked to a specific Plaintiff. The Complaint has almost no dates. The linkage between Plaintiffs is merely the county situs for mining and the claim that some Plaintiffs used some Respirator(s) at some point. Some Plaintiffs claim to suffer from CWP and some from silicosis or other injuries.

In Count I, *id.* ¶¶ 19–21, Plaintiffs bring strict tort liability claims against both Manufacturer Defendants and Supplier Defendants, alleging that they knew or should have known that they were placing defective, unsafe, and unreasonably dangerous Respirators into the stream of commerce; that those Respirators were likely to cause harm; and that those Respirators did not contain adequate warnings. *Id.* ¶ 20. Plaintiffs further allege that Defendants knew or could have expected that the Respirators, in their original manufactured condition without being inspected for defects, would reach Plaintiffs' employers for use by Plaintiffs. *Id.* ¶ 20. Plaintiffs argue that they were foreseeable users and suffered harm from such use. *Id.*

In Count II, *id.* ¶¶ 22–31, Plaintiffs claim that Defendants were negligent because each "performed or was aware of the research which confirmed that [the Respirators] would not sufficiently prevent the users' inhalation" of harmful particles causing lung disease and other injuries. *Id.* ¶¶ 23–24. Further, Plaintiffs allege that Defendants knew the Respirators, though

---

[5] 3M Company; Mine Safety Appliances Company; American Optical Corporation; Cabot CSC Corporation; Cabot Corporation; and Aearo, LLC.
[6] Mine Service Company, Inc.; Network Supply; Regina Mine Supply, Inc.; Carbon Mine Supply, LLC; M&M Mine Supply Company, Inc.; and Kentucky Mine Supply Company.

deficient in particular applications and contexts, could possibly meet the minimum governmental approval standards and used that approval as a cover to sell what they knew or should have known were defective products. *Id.* ¶ 28.

In Count III, *id.* ¶¶ 32–35, Plaintiffs allege that Defendants breached the implied warranty of merchantability because they knew the intended use for the Respirators (by Plaintiffs' employers and Plaintiffs) and thus impliedly warranted that the Respirators were of "merchantable quality and safe for their intended use." *Id.* ¶ 33.

In Count IV, *id.* ¶¶ 36–46, Plaintiffs bring an intentional misrepresentation and fraud claim against Manufacturer Defendants for making false material representations in advertisements and promotional materials about the Respirators' safety. *Id.* ¶¶ 36–38. The Complaint essentially alleges that the Respirators did not and could not meet then-federal standards but that, as to some of the masks at issue, the Manufacturers falsified or misstated compliance. Part of this claim addresses the effect of potential fraud on a statute of limitations analysis. *See id.* at ¶¶ 45–46.

In Count V, *id.* ¶¶ 47–50, Plaintiffs deny immunity for Supplier Defendants under the Kentucky Middleman Statute, KY. REV. STAT. § 411.340. Plaintiffs allege that Supplier Defendants are liable in negligence because they knew or should have known that the Respirators were defective in the coal mine context. Compl. ¶ 48. The Complaint includes a series of factual citations and averments pertinent to said actual or imputed knowledge. *See id.* ¶¶ 48–50. Relatedly, in Count VI, *id.* ¶¶ 51–53, Plaintiffs claim that Supplier Defendants should be held strictly liable for the Respirators' defects because they have no immunity. *Id.* ¶ 52.

In Count VII, *id.* ¶¶ 54–59, Plaintiffs seek punitive damages against each Defendant, claiming that their described actions "constitute malicious, willful, wanton and reckless conduct,

and gross negligence, and demonstrate a complete disregard and indifference to the safety of the Plaintiffs." *Id.* ¶ 59.

In Count VIII, *id.* ¶¶ 60–61, finally, Plaintiffs bring Kentucky wrongful death actions on behalf of persons represented in the plaintiff roster that have died from CWP. *Id.* ¶ 61.

On October 25, 2021, Defendant 3M Company ("3M") removed the block of six cases from various state circuit courts. [7] 3M claims federal question jurisdiction and diversity jurisdiction in all six removed actions. Additionally, as to the *Adams* and *Mounts* removals, 3M claims subject matter jurisdiction under the "mass action" variant of the Class Action Fairness Act, § 1332(d). The record is voluminous, but the cases present the same claims and same procedural questions. The Court has reviewed the full pertinent record and the briefing in each case.

## III.    ANALYSIS

### a.    Federal Question Jurisdiction

Federal courts have original jurisdiction under 28 U.S.C. § 1331 to hear cases "in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiffs['] right to relief necessarily depends on resolution of a substantial question of federal law." *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 103 S. Ct. 2841, 2856 (1983)). In most cases that come within § 1331's jurisdictional grant, federal law creates the cause of action and provides the right to relief. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 36 S. Ct. 585 (1916)).

---

[7] *Adams* (7:21-cv-82-REW-CJS; DE 1); *Banks* (7:21-cv-83-REW-CJS; DE 1); *Combs* (7:21-cv-24-REW-CJS; DE 1); *Yates* (7:21-cv-85-REW-CJS; DE 1); *Mounts* (7:21-cv-86-REW-CJS; DE 1); *Hamilton* (7:21-cv-87-REW-CJS; DE 1).

A second avenue into federal court exists for claims that arise under state law but turn on a substantial question of federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2367 (2005). This category of jurisdiction, however, "remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007). The Court must weigh the importance of having a federal forum for important federal issues against the intended division of labor between state and federal courts. *Id.* (citing *Grable*, 125 S. Ct. at 2371). "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction." *Id.* The federal issue must be substantial, indicating "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Miller v. Bruenger*, 949 F.3d 986, 993 (6th Cir. 2020) (quoting *Grable*, 125 S. Ct. at 2367) (internal quotation omitted).

In Count IV of the Complaint, "Intentional Misrepresentation/Fraud Claim Against Each Respiratory Manufacture Defendant," Compl. ¶¶ 36–46, Plaintiffs allege that the Manufacturer Defendants disregarded, failed to certify compliance with, or falsely claimed satisfaction of several aged federal regulations, directives, and certification requirements promulgated by the National Institute for Occupational Health and Safety ("NIOSH"). *Id.* ¶ 39. Defendants do not dispute that Plaintiffs have no direct federal cause of action under such regulations. *See* DE 25 (3M's Response Motion) at 2.[8] Instead, Defendants argue that Count IV of the Complaint presents a substantial federal question and thus supports removal jurisdiction. *See id.* at 1.

The substantial federal question doctrine, long in existence, got fresh definition in *Grable*. *See* 125 S. Ct. at 2367. That case concerned a state title claim that turned on whether the plaintiff

---

[8] The Court will cite to the *Adams* (7:21-cv-82-REW-CJS) docket throughout this Order. While the docket entry numbers are unique to each case's docket, all entries cited in the *Adams* docket appear in each of the other cases' dockets, and the arguments presented and exhibits cited are identical in each docket.

got proper notice pursuant to an Internal Revenue Code provision. *Id.* at 2365. The Court held that "the meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court" and exercised jurisdiction over the case. *Id.* at 2364. By contrast, in *Empire HealthChoice Assurance, Inc. v. McVeigh*, the Supreme Court declined to extend the substantial federal question doctrine to a state law healthcare reimbursement claim with a federal component that was "fact-bound and situation-specific," unlike the "nearly pure issue of law" that was presented in *Grable*. *Empire*, 126 S. Ct. 2121, 2137 (2006). The Court further noted that the issue in *Grable* qualified as a substantial federal question in part because resolution of the federal issue was "dispositive of the case and would be controlling in numerous other cases." *Id.*

The Sixth Circuit has developed a three-part test for determining when to apply the *Grable* substantial federal question doctrine as a jurisdictional path:

> (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities.

*Mikulski*, 501 F.3d at 568 (citing *Grable*, 125 S. Ct. at 2367–68). The following factors are significant in determining the substantiality of a federal question: whether a federal agency is a party to the action and, if so, whether that agency's conduct is in dispute; whether the federal interest is "important (i.e., not trivial)"; whether deciding the federal question will resolve the case; and whether a decision on the federal question will "control numerous other cases." *Mikulski*, 501 F.3d at 570 (citing *Grable*, 125 S. Ct. at 2367–68); *Miller*, 949 F.3d at 993 (citing *Empire*, 126 S. Ct. at 2136–37) (finding that *Grable* presented a federal question, in part, because it involved a question of federal law that "could be settled once and for all" by the Court taking the case).

In this case, the putative federal interest is not substantial. For one, NIOSH, the pertinent agency, whose regulations the Complaint cites, is not a party to this action; even if it were, the

agency's conduct is not in question. Nothing suggests a challenge to a regulation or a dispute over the meaning of a standard. *See* Compl. ¶ 39; DE 23 (Memorandum of Law in Support of Motion to Remand) at 35. Whether 3M complied with a standard or a certification protocol does not call into question the federal standard itself. Instead, Plaintiffs allege that Defendants, private companies, failed to comply with NIOSH regulations or falsely claimed compliance. Compl. ¶ 39. Additionally, the fraud allegations in the Complaint concern alleged violations of federal regulations that expired decades ago. *See id.* (citing 30 C.F.R. part 11 (1974-1998)).[9] It can hardly be said that resolving the question of whether Defendants complied with regulations no longer in existence will answer an important prospective federal question. The record simply does not feature a contested, substantial issue of federal law adequate to trigger the "slim category *Grable* exemplifies*." Empire,* 126 S. Ct. at 2137.

Moreover, addressing Defendants' compliance with federal regulations will not resolve the case. Only one of eight counts in the Complaint—Count IV, alleging misrepresentation and fraud—involves the lapsed federal regulations; the remainder of the counts purely implicate state law theories. *See generally* Compl. Further, Count IV alleges misrepresentation and fraud only against Manufacturer Defendants and only as to some of the products at issue. *See id.* ¶¶ 36–46. And, though the count perhaps is no model of clarity, the key to the claim is the assertions of misrepresentations or fraud by the Manufacturers, not the meaning, construction, or effect of the predicate regulations themselves.

---

[9] The parties dispute whether Plaintiffs' intentional misrepresentation and fraud claim applies to the 3M 8210, N95, which was certified under a newer NIOSH regulation, 84 C.F.R. part 42 (1998-2021). *See* DE 23 at 27; DE 25 at 16. While the Plaintiffs list the 8210 in Count IV of the Complaint, this is an incorporation instance; the Complaint makes no specific allegations of fraud concerning that Respirator. *See* Compl. ¶¶ 36-39. The Court does not, contextually, treat the Plaintiffs' mere reference to the 3M 8210 respirator, without more, as indicative of a fraud claim.

What is more, determining whether Defendants complied with federal regulations in this circumstance will not settle any federal issue "once and for all," *see Empire*, 126 S. Ct. at 2137, nor will it "control numerous other cases," *see Mikulski*, 501 F.3d at 570. This is especially true given that the regulations in question have expired. Rather, Defendants' compliance with or representations about compliance with NIOSH directives is a "fact-bound and situation-specific" inquiry, making this case more akin to *Empire* than *Grable* and weighing against extending jurisdiction. *See Empire*, 126 S. Ct. at 2137; *Grable*, 125 S. Ct. at 2367–68.

Finally, applying the substantial federal question doctrine in this case would inevitably invite into federal court many traditional state law products liability actions that implicate or measure against federal regulations, disturbing Congress's intended federal-state balance. *See Mikulski*, 501 F.3d at 573 ("The question is not whether such a holding will open the federal courts to analogous cases—under the most rudimentary concept of legal precedent it certainly will."). The Court in *Grable* was careful, in approving jurisdiction, to assure that the result of that case would have "only a microscopic effect on the federal-state division." *Grable*, 125 S. Ct. at 2368. Not so here. Products liability claims have historically been heard in state court, which are competent to handle any component of such actions, relative to standards of conduct, that features federal law. *See Mikulski*, 501 F.3d at 560 (citing *Zwickler v. Koota*, 88 S. Ct. 391, 394 (1967)) ("We are mindful that state courts are generally presumed competent to interpret and apply federal law."). Granting jurisdiction in this case would disrupt "the sound division of labor between state and federal courts envisioned by Congress." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2006). There is no federal question jurisdiction under § 1331 in these cases.

### b.  Diversity Jurisdiction

#### i.  *Fraudulent Joinder*

Plaintiffs sued two Kentucky Defendants. That joinder nominally defeats complete diversity. 3M alleges that the two Kentucky Defendants—Kentucky Mine Supply Company and Mine Service Company, both Supplier Defendants—were fraudulently joined to this action to destroy subject matter jurisdiction based on diversity of citizenship. *See* DE 25 at 19. Plaintiffs argue that they have offered sufficient preliminary proof of the Kentucky Defendants' liability to avoid removal based on fraudulent joinder. *See* DE 23 at 38.

Absent a federal question, a party invoking the Court's removal jurisdiction must demonstrate complete diversity of citizenship at the time of removal; that is, all plaintiffs must be diverse from all defendants. 28 U.S.C. § 1332(a)(1); *id.* § 1441(a); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). The Court must resolve all doubts about the propriety of removal in favor of remand and strictly construe the removal statutes. *Eastman*, 438 F.3d at 549–50; *Coyne*, 183 F.3d at 493.

When joinder of a non-diverse party destroys complete diversity, "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (internal quotation omitted). A removing party faces a heavy burden in demonstrating fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013). Joinder of a non-diverse defendant is fraudulent only if it is "clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation omitted). In other words, the removing party must show that there is no "colorable basis for predicting that a plaintiff may recover against [that defendant]." *Coyne*, 183 F.3d at 493. "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails, and the Court must remand the

case to state court for want of subject matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted); *see also Hartley v. CSX Transp.*, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). Further, "the plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry." *Freitas v. McKesson Corp. (In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.)*, 889 F. Supp. 2d 931, 936–37 (E.D. Ky. 2012) (citing *Jerome-Duncan*, 176 F.3d at 907).

In assessing whether joinder was fraudulent, the Court employs "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). As with a 12(b)(6) motion, the Court "must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party.'" *Coyne*, 183 F.3d at 493 (internal quotation omitted). In evaluating fraudulent joinder, the Court can pierce the pleadings and consider the sort of evidence it would at summary judgment but solely "for the limited purpose of determining whether there are undisputed facts that negate the [plaintiffs'] claim[s]." *Casias*, 694 F.3d at 433 (internal quotation omitted).

The law of the forum state "provides the substantive law governing diversity cases." *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996) (citing *Erie R.R. Co. v. Thompson*, 58 S. Ct. 817 (1938)). Therefore, in this case, the Court will apply Kentucky substantive law. The Kentucky Middleman Statute provides that, in a products liability case, distributors are generally shielded from liability when they sell a product in its "original manufactured condition or package" so long as the manufacturer is identified and subject to the court's jurisdiction. KY. REV. STAT. § 411.340. The exception to this rule is when the distributor "knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably

dangerous to the user or consumer." *Id.* If a distributor falls within this exception, the statutory immunity vanishes. *See id.* The burden of showing the predicate, by a preponderance of the evidence, is on the distributor. *Id.* Showing the exception falls on the claimant. *See Flint v. Target Corp.*, No. 3:07-cv-00600-R, 2009 WL 87469, at *3 (W.D. Ky. Jan. 13, 2009), *aff'd*, 362 F. App'x 446 (6th Cir. 2010); *Weixler v. Paris Co., Inc.*, No. 302-cv-390-H, 2003 WL 105503, at *1 (W.D. Ky. Jan. 2, 2003).

Plaintiffs' Complaint expressly alleges that the Supplier Defendants knew or should have known that the Respirators they were distributing were defective. Compl. ¶ 48. As preliminary proof for this contention, Plaintiffs referenced, in the Complaint itself, numerous scientific and governmental publications that were available to Supplier Defendants to inform them that at least some of the Respirators would lose effectiveness in certain applications and/or would leak from ill fit and were, therefore, defective. *Id.* Specifically, Plaintiffs highlight the American National Standards Institute ("ANSI") Practices for Respiratory Protection publication, which contains a consensus of representative organizations as to proper use and application of respirators in the workplace. *Id.*; DE 23 (Memorandum of Law in Support of Motion to Remand) at 40. Plaintiffs offered an expert affidavit consistent with these allegations. DE 22-8, Page ID 898–900 (Parker Affidavit).

Supplier Defendants contend that they had no legal duty to review the ANSI publication highlighted by Plaintiffs and Plaintiffs' expert affidavit and that all the publications referenced contain only general scientific knowledge without specifying whether any specific respirator was defective. DE 25 at 20. Supplier Defendants also argue that it was reasonable for them to depend on the product certifications applicable to the Respirators. *Id.* at 22.

To defeat a fraudulent joinder claim, Plaintiffs need not show that they will prevail against Supplier Defendants at trial; instead, they need only show that they have a "colorable basis" for recovery. *See Coyne*, 183 F.3d at 493. They have met that low bar in this case. Given that the Kentucky Middleman Statute does not absolve distributors and suppliers from liability when they know or should have known of a product's defect, and given the preliminary proof offered by the plaintiffs, it is far from "clear that there can be no recovery" against Supplier Defendants. *See Alexander*, 13 F.3d at 949.

Here, 3M has not satisfied its heavy burden to demonstrate that Plaintiffs have no "glimmer of hope" to recover against the local Kentucky Defendants. *See Christensen*, 24 F. Supp. 3d at 613. Instead, Plaintiffs have made a cognizable claim about Defendants' liability under the exception to the Kentucky Middleman Statute. The putative knowledge boundary sounds in negligence. A full analysis would involve, among other things, consideration of knowledge over time, access to industry information, and the particular risk implicated with the type of product, here a device designed to assure safe breathing around hazardous work. Whether a Supplier Defendant, selling particular safety equipment, knew or should have known about documented problems or concerns relative to that type of equipment is not a topic the record here resolves on undisputed facts.

The Court looks to the Kentucky Court of Appeals's treatment of the exception to the Kentucky Middleman Statute in a factually analogous scenario. In *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474 (Ky. Ct. App. 2005), the plaintiff, Parker, sued asbestos products manufacturers, claiming that they knew or should have known that the products they supplied Parker's employer were defective because "the dangers of asbestos were known in the scientific and medical community at the time he was exposed to asbestos." *Id.* at 478. To support this contention, Parker offered expert testimony, based in part on literature available during the relevant

13

time frame, that the medical community was in fact aware of the danger of asbestos. *See id.* The court concluded that this testimony was sufficient to create a genuine dispute of material fact and, therefore, vacated the trial court's grant of summary judgment to the defendants. *See id.* at 479.

Similarly, here, (and accounting for the pre-discovery and 12(b)(6)-like context) Plaintiffs offer expert testimony that the scientific community was aware of the risk that some respirators, including those produced by the Manufacturer Defendants, were defective during the same time frame that Supplier Defendants supplied them to Plaintiffs' employers. The Court need not decide today whether this creates a dispute of material fact for trial but, instead, must only decide whether this, along with the Complaint allegations and the state of Kentucky law, is sufficient to create a glimmer of hope that the Plaintiffs could prove the Supply Defendants' liability at trial. There surely is a glimmer of hope—both under Kentucky law and as suggested by the proffered illustrative proof—foreclosing a fraudulent joinder finding. The Middleman Statute expressly blesses the theory of supplier liability, and the proof dovetails with the immunity exception.

To support the fraudulent joinder claim, 3M also notes that Plaintiffs' counsel has a pattern in similar cases of joining local supplier defendants to avoid removal without engaging in discovery against those defendants, just as Plaintiffs' counsel has not yet engaged in discovery against the Kentucky Defendants in this case. DE 28 at 23. This claim is irrelevant. Plaintiffs' motives for joining the Kentucky Defendants are immaterial to the determination of fraudulent joinder. *See Jerome-Duncan*, 176 F.3d at 907. Plaintiffs' failure to engage in discovery against Supplier Defendants yet in this case (and against other supplier defendants in prior cases cited by Defendants) is a matter of strategy or perhaps procedural timing, which the Court rejects as the basis for a fraudulent joinder finding. *See Hoskins v. 3M Company*, No. 6:17-cv-304-KKC, No. 7:18-cv-09-KKC, 2018 WL 1040091, at *4 (E.D. Ky. Feb. 23, 2018). Therefore, joinder of

Kentucky Mine Supply Company and Mine Service Company was not fraudulent, for purposes of jurisdictional analysis.

### ii.  *Class Action Fairness Act*

The Class Action Fairness Act ("CAFA") provides federal district courts with jurisdiction to hear a case qualifying as a "mass action," so long as the parties are minimally diverse[10] and the amount in controversy exceeds $5,000,000, aggregating the claims of individual members of the proposed class. 28 U.S.C. § 1332(d)(11)(A),(B); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 282 (6th Cir. 2016) (quoting *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013)); *see also Mason v. Lockwood, Andrews, & Newman, P.C.*, 842 F.3d. 383, 386 (6th Cir. 2016) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739-40 (2014)) ("CAFA 'loosened the requirements for diversity jurisdiction.'"). To be removable, a case must meet the requisites of § 1332(d)(11)(A) and (B).

Nothing in the language of CAFA alters the general rule that the party seeking removal must establish the jurisdictional elements by a preponderance of the evidence. *Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016); *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007). However, while all doubts as to the propriety of removal are generally resolved in favor of remand, no such presumption applies to cases invoking CAFA. *Nessel ex rel. Michigan. V. AmeriGas Partners*, 954 F.3d 831, 834 (6th Cir. 2020).

3M argues that each of the removed actions (*Adams* (7:21-cv-82-REW-CJS) and *Mounts* (7:21-cv-86-REW-CJS)) that involve claims of 100+ plaintiffs[11] is a "mass action" removable

---

[10] Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

[11] While *Banks* also, at least on the Court's perusal, appears to have 100+ plaintiffs, 3M did not argue CAFA as a basis for its removal. *See* 7:21-cv-83-REW-CJS; DE 1. Therefore, the Court will not consider the applicability of CAFA to *Banks*. However, were 3M to allege that *Banks* meets the numerosity requirement for CAFA jurisdiction, this section would apply with equal force as it does to *Adams* and *Mounts*.

under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11). DE 1. A "mass action" as defined by CAFA is a civil action "in which the monetary claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," so long as each plaintiff's individual claim meets the $75,000 amount-in-controversy requirement. § 1332(d)(11)(B)(i). The parties do not contest, and the record supports, that this action satisfies the minimal diversity and amount-in-controversy requirements. The dispute really is over whether the Complaint constitutes a proposal for a joint trial and on the required basis. *See generally* DE 23, 25. To fit within the statute, the action must feature "monetary relief claims of 100 or more persons . . . proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]"

First, the Court rejects the argument that Plaintiffs or their counsel have proposed a joint trial on the ground of common questions of fact or law. In the analysis, the Court first queries for an explicit proposal, relying primarily on the text of the pleading. *See, e.g., Ramirez v. Vintage Pharm., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) ("An explicit proposal encompasses a clear textual request for a joint trial contained within the complaint, a motion, or some other filing by a group of plaintiffs."); *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (finding that the plaintiffs are the "masters of the complaint" and can structure their pleadings to avoid federal jurisdiction). The parties here joust over the language; the Court views the pleading as not explicitly proposing joint trial and certainly not on the ground of commonality.

For one, the Complaint never references trial "jointly." The prayer for relief does include "a trial by jury," Compl., Page ID 882. However, quite ambiguously, this is within a demand for "judgment," an atypical place for jury trial phraseology. The same prayer lists a host of damages, many of which pertain only "where applicable" for the Plaintiff roster. *See id.* Thus, the wrongful

death action feature plainly would apply only to Plaintiffs with a specific injury component. *See id.* ¶¶ 60–61. Further, the judgment demand (which includes the jury demand), uses the modifier "and/or individually." *Id.*, Page ID 882. This signifies, in the Court's view, an effort to cast the claims for relief and sought process flexibly across a broad assemblage of Plaintiffs. The Complaint does not fairly include any overt proposal for joint trial.

Further, under the statute, a proposal for joint trial must be made "on the ground that the plaintiffs' claims involve common questions of law or fact." Not only is there no explicit proposal for joint trial, there certainly is no such proposal grounded on "common questions" of law or fact.

To shed light on the meaning of "common questions" as it appears in CAFA, the Court considers its meaning in the context of Federal Rule of Civil Procedure 23, governing class action suits. Fed. R. Civ. P. 23(a)(2).[12] This is appropriate for multiple reasons. First, the plain text of CAFA states that once an action qualifies as a "mass action," it "shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A). In the paragraphs referenced in § 1332(d)(11)(A), mass actions are treated exactly like Rule 23 class actions for purposes of the statute. *See* § 1332(d)(1),(2)–(10). Second, the language of Rule 23 is nearly identical to the language of CAFA. *Compare* Fed. R. Civ. P. 23(a)(2) ("there are questions of law or fact common to the class"), *with* § 1332(d)(11)(B)(i) ("claims involve common questions of law or fact").

It is also appropriate to look to the meaning of "common questions" in the context of Federal Rule of Civil Procedure 20, governing joinder. Fed. R. Civ. P. 20(a)(1)(B). "By its terms, [Rule 20] requires factual similarity in the allegations supporting [p]laintiffs' claims." *Visendi v.*

---

[12] Regarding Rule 23, whether "common questions of law or fact" exist as required by Fed R. Civ. P. 23(a)(2) is a distinct inquiry from whether such common questions "predominate over any questions affecting only individual members" as required by Fed. R. Civ. P. 23(b)(3). This analysis of Rule 23 case law is confined to the former inquiry.

*Bank of Am.*, 733 F.3d 863, 870 (9th Cir. 2013). Like Rule 23, the language of Rule 20 is substantially similar to that of CAFA, though, unlike CAFA, phrased in the singular. *Compare* Fed. R. Civ. P. 20(a)(1)(B) ("any question of law or fact common to all plaintiffs will arise in the action"), *with* § 1332(d)(11)(B)(i) ("claims involve common questions of law or fact"). Therefore, it is sensible to look to both Rule 23 and Rule 20 for guidance in interpreting "common questions" as the notion appears in CAFA.

A "common question" exists where "the same evidence will suffice for each member [of the plaintiff class] to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 414 (6th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). In other words, common questions are those "that can be proved through evidence common to the class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858 (6th Cir. 2013) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195–96 (2013)). *See also Rikos v. Procter & Gamble, Co.*, 799 F.3d 497, 507 (6th Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 746 F.3d 750, 756 (7th Cir. 2014) ("[W]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.").

By contrast, an "individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Martin*, 896 F. 3d at 414 (quoting *Bouaphakeo*, 136 S. Ct. at 1045). A case likely involves individual questions, and courts should be wary of class treatment, "where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th

18

Cir. 1988). To determine whether common or individual questions exist, courts should "identify the substantive issues that will control the outcome" and "consider how a trial on the merits would be conducted if a class were certified." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (alterations adopted).

Here, commonality is woefully thin across the rosters of Plaintiffs. The Complaint alleges that a group of distinct manufacturers produced a group of distinct respirators that got to Plaintiffs' employers through a distinct set of distributors. *See generally* Compl. The Plaintiffs, all tied to coal mining at unidentified employers in a particular county, suffered dust (coal, rock, sand) exposure while using one or more of the respirators. There is no assertion, certainly no common assertion, of when, where, or how long exposure from any variety of contaminant during the use of any unifying product occurred. *See generally* Compl. ¶¶ 3, 11, 18. The proof put on by each plaintiff will be different depending on the following questions and factors: Which Respirator(s) did Plaintiff use, and when? Which Manufacturer Defendant manufactured the Respirator(s) used by each Plaintiff? From which Supplier Defendant the Plaintiff or Plaintiffs' employer(s) bought the Respirator(s)? At what job(s) and during what time period(s) each Plaintiff wore the Respirator(s)? What were the particulars of work conditions and environment of exposure? What injury each Plaintiff claims (some perhaps CWP only, some silicosis, some, other lung disease)? What was the cause(s) of any claimed injury and the medical history of any claiming Plaintiff? Did each Plaintiff have any pre-existing conditions, comorbidities, or life circumstances that may have contributed to cause or injuries? What was the level of exposure to harmful particles unique to each worksite? Individualization pervades the case. In short, the same evidence will not suffice for each Plaintiff to make a prima facie showing of the various counts in the Complaint. *See Martin*, 896 F. 3d at 414. Instead, the evidence presented will vary from member to member. *See*

19

*id.* These are individual questions that signify lack of commonality and unfitness for class treatment.

Contrast this case, on the issue of commonality, with *Olden v. LaFarge Corporation*, 383 F.3d 495 (6th Cir. 2004). In *Olden*, the plaintiffs were allegedly exposed to and injured by harmful toxins originating in a large cement manufacturing complex owned entirely and solely by the defendant. *Id.* at 497. The Sixth Circuit affirmed the district court's finding that the plaintiffs raised common allegations of fact because the single defendant's liability could "likely be determined for the entire class." *Id.* at 508. The current case is distinguishable from *Olden* because the Plaintiffs' allegations reach multiple manufacturers and suppliers in the Defendant groups without claiming, in any uniform or broadly applicable way across the Plaintiffs, the liability attributable to each Defendant. *See generally* Compl. Therefore, no single Defendant's liability could be determined across the whole class.

This case is more akin to *Visendi v. Bank of America*, 733 F.3d 863 (9th Cir. 2013). In *Visendi*, over 100 plaintiffs sued 25 financial institutions alleging, among other things, injury resulting from the institutions' deceptive lending practices. *Id.* at 867. The court found that plaintiffs' claims did not present any common questions of law or fact because the "[p]laintiffs own and operate separate and unrelated properties around the country, they entered into separate loan transactions, and their dealings with [the] [d]efendants were necessarily varied." *Id.* at 870. The court further noted that "[n]othing unites all of these [p]laintiffs but the superficial similarity of their allegations and common choice of counsel" and that plaintiffs' claims "each require particularized factual analysis." *Id.* Similarly, in this case, Plaintiffs' claims involve many distinct transactions between Plaintiffs' employers, Supplier Defendants, and Manufacturer Defendants; Plaintiffs worked at separate worksites in Pike County (or the county of mining) at different points

in time; and Plaintiffs wore different Respirators at different points and in different circumstances. *See generally* Compl. Plaintiffs' claims are united by the same "superficial similarity" as the plaintiffs in *Visendi* and will also require like "individualized analysis." *See Visendi*, 733 F.3d at 870.

What commonality appears in the Complaint?[13] Some Plaintiffs must have used the same model Respirators, at some point in time. However, not only does the Complaint eschew dates and locations, but the document also makes it clear that the only concrete commonality is that each mining Plaintiff worked, at some undefined point, in the same county. The CAFA commonality required is a joint trial proposed "on the ground that plaintiffs' claims involve common questions" of law or fact. The text signifies that the questions must be common to all plaintiffs (*i.e.*, it says "plaintiffs' claims involve") and that there must be more than one such instance of commonality (*i.e.*, it says "question**s**" of law or fact).

But was there a qualifying implicit joinder proposal? Certainly, the Circuits dealing with the topic of joint trial proposal have limned routes for both an explicit and an implicit version. *See Ramirez v. Vintage Pharm.*, 852 F.3d 324, 329 (3ʳᵈ Cir. 2017). Thus, "an implicit proposal may be found when all of the circumstances of the action, including the language of the complaint and the structure of the action, lead to the assumption that the claims will be tried jointly." *Id.* Importantly, a "proposal," by definition, is an intentional and volitional act.[14] As noted in *Parson v. Johnson & Johnson*, 749 F.3d 879, 888 (10th Cir. 2014) (internal citation expanded):

---

[13] As an aside, the Court is highly skeptical of the propriety of joinder here, under Kentucky law.  For plaintiffs to join in one action, under Kentucky's rules, they must assert a right "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact *common to all these persons will arise* in the action." Ky. R. Civ. P. 20.01(emphasis added). There is much doubt over whether Plaintiffs here meet either requirement. Certainly, there is no evident question common to all Plaintiffs.

[14] There is debate over the potential source for the proposal for joint trial. Certainly, it cannot be the defense. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1049 (9th Cir. 2015).

> First, the common usage of the word "propose" involves an intentional act. To "propose" means "to suggest (something, such as a plan or theory) to a person or group of people to consider"; "to plan or intend to do (something)"; or "to suggest (someone) for a job, position, office, etc." Merriam–Webster Online Dictionary, http://www.merriam-webster. Com/dictionary/proposed (visited March 29, 2014). *See Scimone,* 720 F.3d at 884 ("The more natural reading of the [mass action] provision is that the plaintiffs must actually want, or at least intend to bring about, what they are proposing.").

Other cases finding an implicit proposal have focused not just on joinder of supernumerary plaintiffs but also on the text and structure of the pleading. Keys have included roster wide allegations and indicia of thorough commonality. *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761 (7th Cir. 2008) ("Their complaint alleges that several questions of law and fact are common to all 144 plaintiffs; it provides no more information about each individual plaintiff than an avowed class complaint would do."); *Ramirez,* 852 F.3d at 327 ("Where, as here, more than 100 plaintiffs file a single complaint containing claims involving common questions of law and fact, a proposal for a joint trial will be presumed unless an explicit and unambiguous disclaimer is included."); *Visendi*, 733 F.3d at 868 (100+ plaintiff complaint with allegations, by all, that "they were victims of a 'common plan and scheme[]'"). Here, not so. Not a single issue, outside of the neutral circumstance of county of mine, unites *each* Plaintiff in the roster.

The Court also considers the "circumstances" of the action.[15] 3M simultaneously removed six cases from Pike and surrounding counties. It left one case. *See Randy Adams, et al. v. 3M Co., et al.*, Civ. No. 20-CI-00382, Pike Circuit Court. Although each case involves more or less a distinct Plaintiff roster, the cases all a) have the same claims b) target the same groups of

---

However, nothing prohibits counsel for plaintiff from serving as the subject speaker. Here, the Complaints are not verified. Counsel for Plaintiffs signed each one.

[15] Courts assess the plaintiffs' litigation conduct in discerning whether they have proposed a joint trial. *See Scimone*, 720 F.3d at 881–82 (finding that plaintiffs can propose a joint trial either in the complaint or "by their litigation conduct"); *Parson*, 749 F.3d at 888 (finding that the plaintiffs' "intention to avoid CAFA jurisdiction is also consistently reflected in their litigation conduct").

defendants c) feature textual and structural near identicality and d) involve the same prosecuting lawyers. Further, the lawyers filed all of the cases in the 2020-21 range.

Importantly, in Pike Circuit Court, the parties had addressed the issue of joint or separate trial in the *Randy Adams* matter. The same lawyers had filed the now-removed *Brian Adams* case in April 2021 and the now-removed *Mounts* case in September 2021. Sandwiched between, both the selfsame plaintiff lawyers and 3M had addressed trial in the *Randy Adams* case. *See* DE 22-4; DE 22-5. In the briefing, 3M plainly indicated its expectation of multiple individual trials. *See* DE 22-4, Page ID 786 ("[T]here must be an orderly process for trying some cases[.]").  Counsel for the *Randy Adams* Plaintiffs (numbering a group of about 53), was also very clear on the expectation of individual trials. *See* DE 22-5, Page ID 807–09. Plaintiffs there rejected even limited bellwether trials and argued: "In this case, there is no similarity between cases." *See id.* at 808. In its argument, 3M had referenced not just the pending case but the "[m]ore than 1,200 claimants [with] cases pending against 3M in Kentucky . . . 500 such claimants with cases pending in this [Pike Circuit] Court." DE 22-4, Page ID 786. The context of the discussion included the full state respirator litigation involving 3M.

All of this briefing occurred in May and July of 2021. In October of 2021, 3M removed the *Brian Adams* and *Mounts* cases, and they assert, to effect CAFA removal, that Plaintiffs in those cases proposed joint trials. Thus, all of the lawyers, confronting the same landscape, envisioned separate trials in May and July of 2021, yet 3M attributes an intent for joint trial to Plaintiffs' counsel in the removed cases, filed in April and September of 2021. The Court is not convinced. The case circumstances and litigation conduct clearly show a Plaintiffs' group resolutely advocating contra joint trial. To quote the lawyers again, "there is no similarity between each individual Plaintiff's case, except that they are all coal miners from Pike County." DE 22-5,

Page ID 809. As a matter of fact and logic, Plaintiffs did not implicitly propose what they explicitly opposed.

The post-removal posturing, of course, confirms the view.[16] Plaintiffs immediately moved to remand and abjured any intent to propose joint trial. *See, e.g.*, DE 29 at 2 ("The dissimilarity of the Plaintiffs' claims will require an independent expert analysis of each case. . . The structure of Plaintiffs' Complaint demonstrates what all parties have acknowledged—these cases cannot be tried together."). 3M's views are miraculously consonant in the federal forum. Per 3M: "This is an excellent argument, which 3M itself has made when faced with the prospect of consolidated trials. Plaintiffs' claims cannot and should not be tried jointly." DE 25 at 5.

Consider 3M's CAFA legerdemain. Plaintiffs' counsel, overseeing and stewarding a raft of identical state cases, strongly advocates for individual trials in Kentucky courts. Despite that, 3M removes, partly on the premise that Plaintiffs were proposing joint trial based on commonality. All parties immediately describe joint trial as impossible. On this record, and given this context and chronology, the Court rejects the notion that Plaintiffs intended to or volitionally acted in a way that would propose a joint trial. The circumstances of the action unmistakably indicate that Plaintiffs did not propose a joint trial grounded on common questions of law or fact. There is no signal for joint trial. There is no penetrating commonality, even on one question of law or fact. 3M fails in its bid to hook the § 1332(d)(11)(B)(i) predicate.[17] Therefore, the Court does not have removal jurisdiction under CAFA for the *Adams* or *Mounts* actions.

---

[16] The Court realizes that the judgment on removal propriety happens at the point of removal. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). Here, the Court merely notes the contemporaneous positions from the parties, which square directly with the view that the Plaintiffs not be tried jointly. Bookends showing clear intent for separate trials surround the 3M removal, which cuts conclusively against any implicit proposal for joint trial.

[17] 3M's best theory, really, is that the mere act of joinder, at the 100+ plaintiff quota, is itself an implicit proposal. To that idea, the Court notes that the statute does not say it. The statute requires a proposal for joint trial grounded particularly on multiple questions of law or fact shared by all plaintiffs. Further, the

## IV.     CONCLUSION

In sum, no subject matter jurisdiction supports removal of these six cases. There is no federal question jurisdiction because the cases do not present a substantial federal question. There is no diversity jurisdiction because the Kentucky Defendants were not fraudulently joined, and, as to the *Adams* and *Mounts* cases, the requirements of a "mass action" removable under CAFA are lacking.[18]

Accordingly, the Court **ORDERS** as follows:

1.  The Court **GRANTS** DE 22 (*Adams*, 7:21-cv-82-REW-CJS) and **REMANDS** the case to Pike Circuit Court;

2.  The Court **GRANTS** DE 28 (*Banks*, 7:21-cv-83-REW-CJS) and **REMANDS** the case to Letcher Circuit Court;

3.  The Court **GRANTS** DE 26 (*Combs*, 7:21-cv-84-REW-CJS) and **REMANDS** the case to Knott Circuit Court;

4.  The Court **GRANTS** DE 29 (*Yates*, 7:21-cv-85-REW-CJS) and **REMANDS** the case to Floyd Circuit Court;

5.  The Court **GRANTS** DE 28 (*Mounts*, 7:21-cv-86-REW-CJS) and **REMANDS** the case to Pike Circuit Court;

6.  The Court **GRANTS** DE 23 (*Hamilton*, 7:21-cv-87-REW-CJS) and **REMANDS** the case to Pike Circuit Court; and

7.  The Court ends the cases, as a federal matter, but will not rule on the other pending motions in any of these six actions. *See Brierly v. Alusuisse Flexible Packaging,*

---

cases finding implicitness via the decision to mass 100+ plaintiffs note also the requirement of allegations of sufficient commonality. *See, e.g., Ramirez*, 852 F.3d at 327 (presuming joint trial proposal on numerosity under "a single complaint containing claims involving common questions of law and fact").

[18] The Court does not reach the § 1332(d)(4) local controversy basis for declination.

*Inc.*, 184 F.3d 527, 531 (6th Cir. 1999) ("[R]emand to state court divests a district court of jurisdiction such that it may not take any further action on the case.")

This the 27th day of September, 2022.

Signed By:

*Robert E. Wier*

**United States District Judge**