UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| BRIAN ADAMS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY, *et al.*<br><br>Defendants. | ) | No. 7:21-CV-82-REW-CJS<br><br>STATUS REPORT |

*** *** *** ***

After four months—two more than originally ordered—the 246 coal miner Plaintiffs turned over:

- Zero engagement letters, documents that should have existed from day one of representation;
- Zero intake forms, documents that have existed from day one of representation; and
- Zero authorizations, which simply require them signing a few forms.

This Court's Order unambiguously required those. Plaintiffs' complete failure to produce basic documents, after four months and two court orders, shows they do not intend to comply.

But there's more. Although Plaintiffs finally provided some responses to the basic questions asked of them, about 60 percent of the responses were left unverified. No explanation why. The responses themselves show about 30 percent of Plaintiffs do not identify a lung disease diagnosis, a far cry from the Complaint's allegation that they *all* had one of several diseases, raising questions about pre-suit diligence. Some Plaintiffs

even say they first met with a lawyer about a respirator case, or were first diagnosed with lung disease, *after* filing this lawsuit.

And there's more. Mike Martin and Johnny Givens—who used to represent all Plaintiffs, then withdrew—now return to represent just 10 coal miner Plaintiffs (plus their spousal Plaintiffs), claiming that the 10 Plaintiffs terminated Glenn Hammond. Hammond apparently disagrees as to nine of them, and now they have dueling responses. Worse, the responses differ on basic facts, like whether the Plaintiff used 3M respirators and when he was injured.

Enough is enough. Plaintiffs have not complied, despite ample opportunities and clear warnings about the consequences. The Court should enforce its orders and dismiss the claims with prejudice.

## Background

Defendants' targeted discovery requests were supposed to address the threshold issues of product identification and Kentucky's one-year statute of limitations. Each Plaintiff knows the Plaintiff-specific information, and their counsel should have had the information (and the documents) before filing suit. Without the information and documents, 3M cannot meaningfully vet Plaintiffs' claims, depose any Plaintiff, or litigate the statute of limitations.

Plaintiffs have had multiple opportunities to fulfill these basic obligations. The May 30 Scheduling Order gave Plaintiffs 60 days to comply, and it warned Plaintiffs that failing to comply would result in dismissal.[1] Every Plaintiff ignored the Scheduling Order, so the Court dismissed their claims without prejudice and gave them 60 more

[1] DE 48 at 3.

days to comply.[2] Again, the Court told Plaintiffs that if they failed to "comply with the mandates of the Scheduling Order," their claims would be "dismissed with prejudice in a final order."[3] The Court's warning was unambiguous: "As the Court established in the Scheduling Order, noncompliance with the mechanics will result in final dismissal of every recalcitrant claimant."[4] Plaintiffs had until September 29 to cure their earlier failure to respond.[5]

On September 28, Hammond served documents purporting to be responses to the short-form interrogatories for 245 of the 246 coal miner Plaintiffs.[6] Hammond's "Notice of Compliance" certified that he had served these responses.[7] Notably, Hammond did *not* certify that the Plaintiffs had produced the required documents, or otherwise certify full compliance with the Scheduling Order.[8] In fact, Hammond produced none of the required documents. Hammond did not communicate with 3M's counsel about these deficiencies.

Oddly, the two lawyers who previously withdrew from representing all Plaintiffs, Martin and Givens, now have re-appeared.[9] Martin says that since their withdrawal, 10

2 DE 57.

3 *Id.* at 2-3.

4 *Id.* at 3.

5 *Id.* at 1.

6 All but Plaintiff Robert Pugh.

7 DE 83 at 1.

8 *See id.*

9 DE 44 (motion to withdraw); DE 49 (order); DEs 59-82, 84-93 (various appearances and motions filed by Martin).

Plaintiffs terminated Hammond and re-hired them.[10] But no motion to substitute counsel was filed; Hammond has not withdrawn and remains counsel of record for these Plaintiffs, and Hammond even served interrogatory responses for nine of them.[11]

Whoever represents them, *none* of the Plaintiffs produced any of the required documents, through either set of lawyers. And the dueling responses are riddled with contradictions. The Plaintiffs have not complied with the Scheduling Order.[12]

## Status Report

### I. All Plaintiffs failed to comply because they did not produce any documents.

All Plaintiffs failed to comply with the Scheduling Order by not producing the required documents. No excuse can justify this failure. Counsel surely has the engagement letters and intake forms. To comply, all counsel had to do was to, sometime in the last four months, copy them, then redact and properly log any privileged information. Likewise, completing the records authorizations simply required each Plaintiff to sign a few forms. These are routine requirements for Plaintiffs and counsel who choose to start the "machine of litigation."[13]

---

10 *E.g.*, DE 64 at 1. In moving to withdraw, Martin and Givens stated that Hammond added their firms' names to the complaint without their approval, and that they agreed to perform jurisdictional briefing following removal. DE 44 at 1. The state court record, however, shows that Martin filed several papers for all Plaintiffs before removal, and that Givens also appeared for all Plaintiffs before removal. *See* DE 1-1 at 80, 82, 83, 88-89, 123-24, 133-34, 156-57.

11 The lone exception is Plaintiff Robert Pugh.

12 For reference, select responses and verifications received from Hammond are attached as Exhibit 1. Select responses and verifications received from Martin are attached as Exhibit 2.

13 *Patton v. Phillips*, No. 7:22-CV-23-REW, 2022 WL 2980343, at *2 (E.D. Ky. July 28, 2022) (dismissing claims with prejudice after plaintiff repeatedly did not comply with Court's orders).

Withholding these documents prejudices 3M. The authorizations seek records relevant to each Plaintiff's constructive or actual knowledge of his claims, as well as other critical issues.[14] Engagement letters and intake forms show when each Plaintiff met with a lawyer about a possible respirator case. The timing of these meetings is an issue in Kentucky respirator litigation. Earlier this year, Judge Hall of the Pike Circuit Court dismissed a similar respirator case after finding that Hammond's affidavit, partially drafted by Martin and purporting to identify when Hammond first met with the plaintiff about the case, was "materially false."[15] Without the documents that the Court has ordered Plaintiffs—repeatedly—to provide, 3M cannot meaningfully investigate or depose Plaintiffs to find out how many more cases involve similar problems. Instead, these cases remain stalled, despite Defendants' and the Court's efforts to advance them.

Plaintiffs have had ample opportunity to produce these basic documents. Continuing to withhold them shows "willful noncompliance" with the Court's orders.[16]

---

14 *See, e.g.*, *Roark v. 3M Co.*, 571 F. Supp. 3d 708, 712-13 (E.D. Ky. 2021) (granting summary judgment; plaintiff's sworn 1994 Kentucky Retraining Incentive Benefits application established he knew he was injured); *Adams v. 3M Co.*, No. 12-61-ART, 2013 WL 3367134, at *3-4 (granting summary judgment; plaintiff's workers' compensation and federal black lung benefits applications "show[ed] that he knew or should have known that he had suffered an invasion of his legally protected interests"); *Boggs v. 3M Co.*, No. 11-57-ART, 2012 WL 3644967, at *3 (E.D. Ky. Aug. 24, 2012) (granting summary judgment; plaintiff's medical records showed he knew that coal mine dust exposure caused CWP), *aff'd*, 527 F. App'x 415 (6th Cir. 2013).

15 Ex. 3, Order Dismissing with Prejudice, *Johnny Wilson*, et ux. *v. 3M Co.*, et al., No. 22-CI-00812 (Pike Cir. Ct. Mar. 9, 2023). Appellate proceedings and bar complaints remain pending. *See also Boggs*, 2012 WL 3644967, at *5-6 (discussing *3M Co. v. Engle*, 328 S.W.3d 184 (Ky. 2010), in which the Kentucky Supreme Court held that 3M was entitled to depose plaintiff's counsel about date of meeting).

16 *Patton*, 2022 WL 2980343, at *1.

The Court ordered that the consequence of continued noncompliance is "final dismissal of every recalcitrant claimant."[17] The Court should enforce its orders.

## II. The Hammond interrogatory responses are woefully deficient.

Even putting aside the complete failure to produce the required documents, the interrogatory responses Hammond filed on behalf of 245 of 246 Plaintiffs do not comply with the Scheduling Order. The Court should not overlook the responses' deficiencies.

### A. Nearly 60 percent of the Hammond responses are unverified.

Of the 245 responses Hammond served, 146 of them—nearly 60 percent—were unverified. Unverified interrogatory responses are not evidence,[18] and they plainly violate Rule 33.[19] Hammond knows these basic requirements. Why Hammond had some Plaintiffs, but not others, swear to their responses' accuracy is a mystery. Interrogatory responses serve little purpose when everyone must guess about their truthfulness. The unverified responses do not comply with the Scheduling Order.

### B. Only about 11 percent of Plaintiffs whom Hammond says used 3M respirators identified the model.

Based on Hammond's responses, 205 Plaintiffs claim to have used 3M respirators. But of these 205, only 23—about 11 percent—answered Interrogatory No. 1 properly, by identifying which model(s) of 3M respirator(s) they say they used.[20] The remaining responses provided vague statements including "3M," "3M paper," and "3M

---

17 DE 57 at 3.

18 *See, e.g.*, *Clemons v. Shelby Cty. Bd. of Educ.*, No. 3:15-CV-00552-GNS-DW, 2018 WL 1476678, at *13 (W.D. Ky. Mar. 26, 2018) (collecting cases).

19 Fed. R. Civ. P. 33(b)(3) (requiring written answer "under oath").

20 The remaining 40 Plaintiffs do not claim to have used 3M respirators. It is unclear why they sued 3M.

white." The interrogatory asked for this basic product identification because no one can litigate a products case without knowing what products a plaintiff used, and the Complaint hides the ball through vague group pleading.[21] Plaintiffs can easily disclose what products they allegedly used. Yet they continue to withhold this basic information that they and Hammond should have confirmed *before filing*.

*Incredibly, three Plaintiffs either do not identify using any Defendants' respirators, or affirmatively disclaim ever having used respirators at all:*

COMES the plaintiff, **Stacy Trotter** , and for his answers to the defendant's joint set of interrogatories to all plaintiffs, states as follows:

**INTERROGATORY NO. 1:** Identify the make and model of each respirator or "dust mask" you used during your coal mining career.

**ANSWER: NONE WORN**

[22]

COMES the plaintiff, Roger Matney, and for his answers to the defendant's joint set of interrogatories to all plaintiffs, states as follows:

**INTERROGATORY NO. 1:** Identify the make and model of each respirator or "dust mask" you used during your coal mining career.

**ANSWER:**

[23]

---

21 *See* Compl., DE 1-1 at 258, ¶ 18 (alleging that "The Plaintiffs, during the scope of their employment, used one or more of the respirators/dust masks manufactured by the Respirator Manufacturing Defendants").

22 Ex. 1 at Stacy Trotter.

23 Ex. 1 at Roger Matney.

> COMES the plaintiff, Joshua Fleming, and for his answers to the defendant's joint set of interrogatories to all plaintiffs, states as follows:
>
> **INTERROGATORY NO. 1:** Identify the make and model of each respirator or "dust mask" you used during your coal mining career.
>
> **ANSWER:**

[24]

Why Plaintiffs who do not identify respirator use nonetheless alleged that respirators injured them is a mystery—and an expensive one for 3M, which has been forced to defend claims apparently created from thin air.

### C. Hammond's responses do not answer the interrogatory about respirator usage by year.

Interrogatory No. 2 asked each Plaintiff to identify the years in which he used each product. That question, too, is straightforward. The Hammond responses didn't answer it, instead providing the number of years in which Plaintiffs allege usage or one broad date range. For example, Plaintiff Joseph Horne said:

> **INTERROGATORY NO. 1:** Identify the make and model of each respirator or "dust mask" you used during your coal mining career.
>
> **ANSWER: 3m DF66 Cabot 2090N Dual filter similar to cabot**
>
> **INTERROGATORY NO. 2:** For each product identified in response to Interrogatory 1, identify the years when plaintiff used that product while mining coal.
>
> **ANSWER: 35 years**

[25]

---

24 Ex. 1 at Joshua Fleming.

25 Ex. 1 at Joseph Horne.

Interrogatory No. 2 sought specific usage years so Defendants could identify the extent of each Plaintiff's claimed usage of its product(s). Defendants still do not know this basic information.

### D. Nearly 30 percent of Plaintiffs identify no lung disease diagnosis.

Assuming Hammond's unverified responses are truthful, 73 Plaintiffs—nearly 30 percent—identify *no* lung disease diagnosis, as the first named Plaintiff Brian Adams's response illustrates:

> **INTERROGATORY NO. 3:** If plaintiff has been diagnosed with black lung disease (including coal workers pneumonoconiosis or silicosis), please:
>
> a. Identify the physician who made the diagnosis and; No
>
> b. Identify the date of that diagnosis. N/A
>
> **ANSWER: No.**

[26]

These responses flatly contradict the Complaint's allegation that *all* Plaintiffs "suffer from an occupational lung disease known as Coal Workers' Pneumoconiosis and/or Silicosis, commonly referred to as 'Black Lung', COPD and other injuries."[27] Counsel surely had to learn whether, and if so, when, each Plaintiff was injured before filing a personal injury suit on their behalf. Yet counsel apparently facilitated dozens of uninjured Plaintiffs' filing suit against Defendants, costing the Defendants money and consuming judicial resources.[28]

---

26 Ex. 1 at Brian Adams.

27 Compl., DE 1-1 at 232, ¶ 1(c).

28 *See id.*, DE 1-1 at 274 (Complaint's signature page, identifying Hammond and Martin as co-counsel).

### E. Nine Plaintiffs claim they first spoke with a lawyer about a respirator lawsuit *after* this case was filed.

This case was filed in state court on April 14, 2021.[29] Inexplicably, nine Plaintiffs claim that they first spoke to a lawyer about a possible respirator lawsuit *after* this case was filed.[30] If these responses are accurate, it appears that this lawsuit was brought without these Plaintiffs' knowledge.

### F. Enough is enough.

Plaintiffs have had 120 days to provide complete, verified responses to simple interrogatories. They ignored the Court's order for the first 60 days, then used their extra 60 days merely to gesture at compliance. Tellingly, the responses they did make reveal that many of their claims are baseless, and should never have been filed in the first place. Enough is enough. All of the Plaintiffs have demonstrated that they do not intend to comply. The Court should enforce its orders.

## III. The Martin responses are also deficient.

Martin provided responses for 10 Plaintiffs whom he claims to represent. Eight of the responses are verified. All responses identify specific products allegedly used and the date ranges of use. But the responses are nonetheless deficient, as discussed below. And, of course, none of these Plaintiffs produced any of the required documents, either.

---

29 Compl., DE 1-1 at 269 (showing Pike Circuit Court e-stamp at top and bottom of page).

30 Ex. 1 at James Adkins; Eddie Branham; Oscar Collins; Troy Hunt; Edward Moore; Ronnie Mullins; Donald Newsome; John Stewart; AJ Thornsberry.

### A. The only three responses identifying the first consultation date report it was after the lawsuit's filing.

The responses of only three of the 10 Martin Plaintiffs disclose when they first met with a lawyer about a possible respirator lawsuit. These three Plaintiffs—just like the nine discussed above—say that first meeting occurred *after* they filed this respirator lawsuit.[31] Again, if these responses are accurate, it appears that this lawsuit was brought without these Plaintiffs' knowledge.

### B. The remaining responses refuse to disclose the first consultation date.

The remaining seven Plaintiffs' responses don't disclose the date they first consulted counsel. They say this date is irrelevant, either because they say they were first diagnosed within one year of suing Defendants or because they were supposedly first diagnosed *after* suing Defendants.[32] The relevance objection is unfounded. 3M has every right to discover when each Plaintiff consulted with a lawyer about the claims he brought against 3M. That date can be relevant to analyzing the statute of limitations because it proves actual knowledge of a potential claim. The discovery is also proportional; it imposes scant burden to identify a meeting date. In any event, Plaintiffs already had the opportunity to object to disclosing this date, and they did not. The Court ordered them to disclose it. Their refusal to do so shows their non-compliance.

The multiple Plaintiffs who claim they were first diagnosed *after* suit was filed—up to over two years later—are also troubling.[33] If they weren't injured, why did they

31 Ex. 2 at Kenneth Meade; Roger Staton; Roger Blair.

32 *See, e.g.*, Ex. 2 at Tim Balthis (irrelevant because diagnosed after complaint filed); Colin Cook (irrelevant because diagnosed within one year of filing).

33 *See, e.g.*, Ex. 2 at Brandon Fleming (claiming first diagnosis was April 20, **2023,** more than two years after April 14, 2021 filing).

sue? Personal injury litigation requires an injury *before* a lawsuit is filed. Plaintiffs do not get to bring meritless cases, then consume Defendants' and the Court's resources for years while waiting to see if their claims ripen.

### C. Martin's and Hammond's responses for the same Plaintiffs conflict.

Hammond and Martin provided dueling responses for nine Plaintiffs.[34] This itself is striking. Martin insists these Plaintiffs terminated Hammond, yet Hammond has not withdrawn; instead, he filed responses on their behalf. Something is amiss.

Many of the dueling responses conflict. For example, Hammond's verified responses for Plaintiff Brandon Fleming report Fleming's first diagnosis was CWP in 2017, and that he has not filed a federal black lung claim.[35] Martin's verified responses for Brandon Fleming report, however, that Fleming's first diagnosis was COPD in 2023, and that he filed a federal black lung claim in 2018 but then withdrew it.[36] These contradictions are inexplicable.

Fleming does not stand alone. Martin's responses claim that Plaintiffs Dennie Pugh and Colin Cook used 3M products, when Hammond's responses for those same Plaintiffs do *not* claim 3M product usage.[37] Martin's response for Plaintiff Roger Staton also claims that he used the 3M 8500 non-toxic particle mask—a product that is not a respirator, that the Complaint's list of products does not encompass, and that

34 The one exception was Robert Pugh. Hammond did not submit responses for him; only Martin did.

35 Ex. 1 at Brandon Fleming.

36 Ex. 2 at Brandon Fleming.

37 *Compare* Ex. 1, *with* Ex. 2 for Dennie Pugh (Hammond says no 3M usage; Martin says 3M 8710 and 3M 8210 respirators); Colin Cook (Hammond says no 3M usage; Martin says 3M 8710 and 3M 8210 respirators).

Hammond's response for Staton does not identify.[38] And Hammond does not list diagnoses for Plaintiffs Tim Balthis, Colin Cook, Brian Dotson, and Dennie Pugh, while Martin does.[39]

Plaintiffs, their counsel Hammond, and their on-again, off-again maybe counsel Martin should have had their facts straight before they filed suit. Certainly, in the last four months, they have had ample opportunity to figure out the facts. Their inconsistent responses—and the fact that many of them seem to have filed suit without knowing they did, or despite the fact that they weren't injured when they did so—cast serious doubt on their claims. The responses prejudice 3M by requiring more investigation into simple facts that each Plaintiff should be able to state with certainty. And they do not comply with the Court's orders.

## Conclusion

The Court repeatedly warned Plaintiffs of the consequences of non-compliance, but those warnings made no difference. The Court should enforce its orders by dismissing all Plaintiffs' cases with prejudice.

Respectfully submitted,

THOMPSON MILLER & SIMPSON PLC

*<u>/s/ Byron N. Miller</u>*

Michael J. Bender
Byron N. Miller
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900

---

[38] *Compare* Ex. 1, with Ex. 2 for Roger Staton.

[39] *Compare* Ex. 1, with Ex. 2 for Tim Balthis; Colin Cook; Brian Dotson; Dennie Pugh.

Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

And

Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charlestown, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
BSpann@tcspllc.com
RAkers@tcspllc.com
JBrowne@tcspllc.com
LGibson@tcspllc.com
*Counsel for Defendant 3M Company*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served electronically or via U.S. Mail this 6th day of October 2023 upon the following:

| | |
|---|---|
| Glenn Martin Hammond<br>Glenn M. Hammond Law Office<br>5476 North Mayo Trail<br>P.O. Box 1109<br>Pikeville, KY 41501<br>gmhlaw@hotmail.com<br>erin@gmhlawoffice.com<br>*Counsel for Plaintiffs* | Michael B. Martin<br>Martin Walton Law Firm<br>699 S. Friendswood Drive, Suite 107<br>Houston, TX 77546-4580<br>mmartin@martinwaltonlaw.com<br>rhonda@martinwaltonlaw.com<br>melissa@martinwaltonlaw.com<br>beth@martinwaltonlaw.com<br>*Counsel for Plaintiff* |
| M. Trent Spurlock<br>Alice A. Jones<br>Dinsmore & Shohl, LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Trent.Spurlock@Dinsmore.com<br>Alice.Jones@Dinsmore.com<br>Brenda.Goodhue@Dinsmore.com<br>*Counsel for Defendant Mine Safety Appliances Company, LLC* | Robert M. Connolly<br>Carol Dan Browning<br>Whitney Frazier Watt<br>Emily L. Startsman<br>Stites & Harbison, PLLC<br>400 West Market Street, Suite 1800<br>Louisville, KY 40202<br>rconnolly@stites.com<br>cbrowning@stites.com<br>wwatt@stites.com |

| | |
|---|---|
| | estartsman@stites.com<br>*Counsel for Defendants American Optical Corporation, Cabot CSC Corporation, Cabot Corporation, Aearo Technologies, LLC and Aearo, LLC* |
| Patrick W. Gault<br>Napier Gault Schupbach & Stevens PLC<br>730 West Main Street, Suite 400<br>Louisville, KY 40202<br>pgault@napiergaultlaw.com<br>abury@napiergaultlaw.com<br>*Counsel for Defendant Mine Service Company, Inc. and Kentucky Mine Supply Company* | |

*/s/ Byron N. Miller*
*Counsel for Defendant 3M Company*