UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| BRIAN ADAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | No. 7:21-CV-82-REW-CJS |
| | ) | |
| 3M COMPANY, *et al.* | ) | DEFENDANTS' JOINT |
| | ) | BRIEF ON STATUTE OF |
| Defendants | ) | LIMITATIONS |
| | ) | PRINCIPLES |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

## INTRODUCTION

Kentucky law, including decisions from this Court, provides a clear template on how to apply Kentucky's one-year statute of limitations to Plaintiffs' respirator (or "dust mask") cases. Informed by those decisions, and at the Court's direction, Defendants 3M Company; Mine Respirator Company, LLC; American Optical Corporation; Cabot CSC Corporation; Cabot Corporation; Aearo Technologies LLC; Aearo LLC; Mine Service Company, Inc.; and Kentucky Mine Supply Company submit this brief on general statute-of-limitations principles. *See* Scheduling Order, DE 256, ¶ 3(b).

## DISCUSSION

Kentucky has a one-year statute of limitations for personal-injury claims. KRS 413.140(1)(a). At least four times, this Court has applied it to grant defendant respirator manufacturers' summary judgment motions. *See* Exhibit 1, Order [DE 30], *Mullins v. Mine Safety Appliances Co., LLC*, No. 7:20-cv-00136-REW-EBA (E.D. Ky. Mar. 28, 2023) ("*Mullins* Order"); *Roark v. 3M Co.*, 571 F. Supp. 3d 708, 711 (E.D. Ky. 2021); *Adams v. 3M Co.*, No. 12-

61-ART, 2013 3367134 (E.D. Ky. July 5, 2013); *Boggs v. 3M Co.*, No. 11-57-ART, 2012 WL 3644967 (E.D. Ky. Aug. 24, 2012), *aff'd on other grounds*, 527 F. App'x 415 (6th Cir. 2013).[1] These decisions provide the framework for applying the law in this context.

**I.     Trial courts apply the statute of limitations to grant summary judgment when the facts material to timeliness are not genuinely disputed.**

**A.     This is settled law.**

Plaintiffs often erroneously argue that applying the discovery rule necessarily presents fact issues for a jury. The discovery rule tolls the statute of limitations period "until the plaintiff discovers or in exercise of reasonable diligence should have discovered" that (1) he was injured and (2) his injury "may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 508 S.W.2d 497, 501 (Ky. 1979). The Kentucky Supreme Court, however, has "long held" that when the facts material to evaluating a claim's timeliness cannot be genuinely disputed, the trial court "can and should" determine the validity of the statute-of-limitations defense as a matter of law. *Smith v. Fletcher*, 613 S.W.3d 18, 24 (Ky. 2020) (citation omitted).

This rule does not change if the plaintiff invokes the discovery rule, as the Kentucky Supreme Court held in *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489 (Ky. 2014). There, the trial court had granted the defendant's summary judgment motion based on the statute of limitations. *Dean*, 434 S.W.3d 489, 503 (Ky. 2014). On appeal, the

---

[1] The Sixth Circuit's opinion in *Boggs* did not question this Court's application of the statute of limitations. On appeal, the plaintiffs chose not to challenge that aspect of this Court's summary judgment order. *See Boggs*, 527 F. App'x at 416 ("At this point in the litigation, the parties share considerable common ground about the legal parameters for resolving this dispute . . . . They agree that Boggs's pneumoconiosis claim is barred by the one-year limitations period."), 418 ("Boggs's original claims for silicosis and pneumoconiosis were themselves untimely, a conclusion Boggs does not challenge on appeal."). The Sixth Circuit rejected the plaintiffs' contention that a purported claim based on lung cancer was timely and affirmed this Court's judgment. *See id.* at 416–19.

plaintiff "argue[d] that the question [relevant for applying the discovery rule] is whether he could have *reasonably* discovered the [injury] or whether he exercised *reasonable* diligence, ***and that reasonableness is always a factual question for the jury*.**" *Id.* (third emphasis added). The Kentucky Supreme Court rejected the contention that reasonableness is always a factual question for the jury, and its reasoning bears emphasis:

> While reasonableness, like all factual questions, is ordinarily determined by the finder of fact, ***merely raising the question is not by itself sufficient to present it to the fact finder***. The reasonableness of an act or omission is required to go to the jury only where there is a "factual dispute regarding the reasonableness." *R.T. Vanderbilt Co., Inc. v. Franklin*, 290 S.W.3d 654, 659 (Ky.App.2009). ***But if "reasonable minds cannot differ," then the matter need not be submitted to a jury***. *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 916 (Ky.2013).

*Dean*, 434 S.W.3d at 503 (emphasis added).

An example is *Fluke Corporation v. LeMaster*, 306 S.W.3d 55 (Ky. 2010). In *Fluke*, the plaintiffs were injured in an electrical explosion at a coal tipple. *Fluke*, 306 S.W.3d at 57. More than a year after suing the tipple's owner, the plaintiffs amended their complaint to bring a claim against the manufacturer of voltage meters that they used on the day of the explosion. *Id.* at 57–58. The trial court granted summary judgment to the manufacturer defendant on the statute of limitations, ruling that the plaintiffs reasonably should have known the reader malfunctioned, and their claims were time-barred. *Id.* at 59–60. But the Kentucky Court of Appeals reversed, ruling that equitable estoppel barred the manufacturer defendant from asserting a statute-of-limitations defense based on its alleged failure to comply with a duty to report consumer product hazards. *Id.* The Kentucky Supreme Court reversed, reinstating the trial court's judgment for the manufacturer defendant. *Id.* at 67. The plaintiffs had done nothing to investigate their claims against the manufacturer within the limitations period. *Id.* at 65. That fact was not genuinely disputed, only whether the plaintiff could benefit from equitable estoppel in those

circumstances. *See id.* at 65–67. That presented a legal question, and the Kentucky Supreme Court resolved it. *Id.* at 67.

This Court holds the same. The statute-of-limitations defense "ultimately is a legal question" that requires a jury's resolution *only if* genuine "factual disputes underpin the analysis." *Corder v. Ethicon, Inc.*, No. 6:19-cv-273-REW, 2023 WL 7169091, at *1 (E.D. Ky. Sept. 26, 2023) (granting summary judgment on statute of limitations to defendant product manufacturer).

### B.    *3M Company v. Engle* is inapposite.

Plaintiffs often claim *3M Company v. Engle* supports their position that the statute-of-limitations inquiry should always be a question of fact for the jury. In dicta, *Engle* states that "[w]hen a plaintiff is put on notice of his injury is a question of fact for the jury." *3M Co. v. Engle*, 328 S.W.3d 184, 189 (Ky. 2010). But *Engle* is inapposite for two reasons.

*First*, as this Court's analysis in *Boggs* shows, this statement in *Engle* is dicta. *Boggs*, 2012 WL 3644967, at *5–6. The trial court in *Engle* denied summary judgment, but allowed 3M to depose the plaintiff's attorney as a fact witness on the statute of limitations. *See Engle*, 328 S.W.3d at 186–87. The issue presented in *Engle* was whether the Kentucky Court of Appeals erred in granting a writ of prohibition preventing the deposition. *Id.* at 186. The plaintiff had waived the attorney-client privilege by relying on an alleged conversation with his attorney in opposing 3M's summary judgment motion. *Id.* at 187–90. So, the Kentucky Supreme Court reversed and vacated the writ of prohibition. *Id.* at 190–91.

As this Court recognized, the Kentucky Supreme Court "did *not* decide" whether the trial court's order denying summary judgment was correct. *Boggs*, 2012 WL 3644967, at *5. "The merits of the trial court's denial of summary judgment were simply not before the Kentucky Supreme Court, nor could they have been," because that order was interlocutory. *Id.* (citing

*Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010)). "*Engle* was about nothing more than a discovery dispute," not the discovery *rule*. It is "therefore irrelevant" to applying the statute of limitations. *Id.* at *5. So, its passing statement about notice presenting a fact question was dicta, having no precedential value. *See Stivers v. Beshear*, 659 S.W.3d 313, 320–22 (Ky. 2022).

*Second*, decisions after *Engle* confirm that its dicta is not Kentucky law. *Smith*, a 2020 decision, reiterates that courts, not jurors, decide the statute-of-limitations defense when the facts material to timeliness are not genuinely disputed. *Smith*, 613 S.W.3d at 24. For that reason, the Kentucky Supreme Court has affirmed summary judgment based on the statute of limitations over a plaintiff's insistence that reasonable diligence presented a jury question. *Dean*, 434 S.W.3d at 503. *Dean* would have come out the other way if *Engle*'s dicta were the law, as would have *Fluke*, which was decided the same year as *Engle*.

Courts, like legislatures, do not "hide elephants in mouseholes." *Beshear v. Acree*, 615 S.W.3d 780, 802 (Ky. 2020) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). This Court got it right in *Boggs*: the Kentucky Supreme Court did not "radically change" the discovery rule through one sentence of dicta. *Boggs*, 2012 WL 3644967, at *6. This Court should not rely on *Engle* in applying the statute of limitations.

## II.    Actual and constructive knowledge have the same legal effect.

For latent injuries like black lung, the one-year statute of limitations is subject to the discovery rule. *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979). "The discovery rule applies 'when the complained of injury is not immediately discoverable,' and alleviates 'the unfairness inherent in charging a plaintiff with slumbering on rights not reasonably possible to ascertain.'" *Askin v. Univ. of Notre Dame*, No. 2022-CA-0775-MR, 2023 WL 4830863, at *5 (Ky. App. July 28, 2023) (quoting *Wilson v. Paine*, 288 S.W.3d

284, 286 (Ky. 2009)), *review denied* (Ky. Feb. 7, 2024). But this does not give the plaintiff an indefinite pass: claims for latent injuries accrue when "the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Tr.*, 580 S.W.3d at 501. Either actual knowledge—what the plaintiff himself *subjectively* knew—or constructive knowledge—what a reasonable person in the plaintiff's position *objectively should* have known by exercising reasonable diligence—is sufficient. *See Roark*, 571 F. Supp. 3d at 712; *Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 802 (E.D. Ky. 2000) (granting summary judgment to defendants based on statute of limitations and rejecting plaintiffs' reliance on "whether they had subjective knowledge of their injuries and the cause").

*Dean*, and this Court's decisions in *Boggs*, *Adams*, *Roark*, and *Mullins*, all apply this settled law on this point. Had the plaintiff in *Dean* "even look[ed] into the matter," he "would have seen numerous suspicious items" that should have prompted a reasonably diligent person to inquire further. *Dean*, 434 S.W.3d at 505. Similarly, a person who knew he wore respirators to prevent black lung, yet still developed black lung, should have suspected the respirators might not have protected him. *Mullins* Order at 9–12; *Roark*, 571 F. Supp. 3d at 712–13; *Adams*, 2013 WL 3367134, at *3–4; *Boggs*, 2012 WL 3644967, at *3–5. Constructive knowledge of the basis for the claims sufficed.

## III. The discovery rule requires actual or constructive knowledge of injury.

The discovery rule's first inquiry is when the plaintiff actually knew, or when a reasonable person exercising due diligence should have known, that he was injured. *See Louisville Tr. Co.*, 580 S.W.2d at 501; *Askin*, 2023 WL 1830863, at *5 ("Under the discovery rule, the limitations period begins to run 'on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered."). In

Kentucky, "injury" is a "term of art" that "is distinguishable from mere physical harm." *Roark*, 571 F. Supp. 3d at 712 (citing *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000)). "For purposes of the discovery rule, injury is defined as the invasion of any legally protected interest of another." *Id.* (internal quotation marks and citations omitted). "The plaintiff need not know he has a legally cognizable claim at the time the injury occurs; he need only know he has an injury (*i.e.*, harm plus a potentially responsible actor)." *Mullins* Order at 7 (citing *Roark*, 571 F. Supp. 3d at 712).

### A.    Diagnosis with a dust-caused lung disease shows knowledge of injury.

Diagnosis with a dust-caused lung disease satisfies the knowledge-of-injury requirement. *Mullins*, *Roark*, *Adams*, and *Boggs* all show that. *Mullins* Order at 8 ("[T]he point at which Mullins discovered his CWP diagnosis is the relevant date of injury."); *Roark*, 571 F. Supp. 3d at 712 (plaintiff "knew that he had suffered an 'injury' in 1994 when he was diagnosed with CWP by multiple doctors"); *Adams*, 2013 WL 3367134, at *3 (plaintiff "knew he had suffered an 'injury'" when he was "diagnosed with both silicosis and black lung disease"); *Boggs*, 2012 WL 3644967, at *3 (among facts that "irrefutably demonstrate that Boggs knew about his disease" were that a doctor "diagnosed Boggs with black lung disease"). As discussed further below, a diagnosis is sufficient but not necessary for knowledge of injury.

Courts applying West Virginia's analogous discovery rule have also held diagnosis dates show knowledge of injury. *Teets v. Mine Safety Appliances Co., LLC*, No. 21-1834, 2022 WL 14365086, at *2 (4th Cir. Oct. 25, 2022) ("[I]t is undisputed that when he was diagnosed in 2017, [the plaintiff] knew that he had been injured . . . ."); *Collins v. Mine Safety Appliances Co.*, No. 21-0621, 2022 WL 10084174, at *2 (W. Va. Oct. 17, 2022) ("[I]t is undisputed that [the plaintiff] knew . . . the date of his black lung diagnosis."); *Hardy v. 3M Co.*, No. 22-ICA-123, 2023 WL 7402890, at *7 (W. Va. Ct. App. Nov. 8, 2023)  (The plaintiffs "knew . . . the dates on which they

were either diagnosed with some form of black lung [or] black lung itself . . . ."), *appeal docketed*, No. 23-717 (W. Va.); *Goodwin v. 3M Co.*, No. 24-ICA-186, 2024 WL 5202119, at *10 (W. Va. Ct. App. Dec. 23, 2024), *appeal docketed*, No. 25-55 (W. Va.) (adopting *Hardy* analysis). All four cases affirmed summary judgment for defendant respirator manufacturers.

      **B.**    **Applying for federal or state compensation benefits by claiming a dust-caused lung disease shows knowledge of injury.**

A plaintiff knows he is injured if he applies for federal black lung benefits or state compensation benefits based on occupational dust exposure. This Court noted plaintiffs' benefits applications in *Boggs* and *Adams* in discussing knowledge of injury. *See Adams*, 2013 WL 3367134, at *3; *Boggs*, 2012 WL 3644967, at *3. Similarly, the West Virginia Intermediate Court of Appeals has twice held that either applying for federal black lung benefits or receiving more than *de minimis* West Virginia compensation benefits shows knowledge of injury. *See Hardy*, 2023 WL 7402890, at *8 ("petitioners knew at the time they received compensation . . . or applied for federal black lung benefits that they suffered an injury . . ."); *Goodwin*, 2024 WL 5202119, at *10.

The reason why is clear. When a plaintiff tells the government he is owed money for black lung or other dust-caused lung disease—and equally so when he receives compensation related to a state or federal black lung claim—he knows he is injured.

Consider federal black lung benefits. The claim starts with a standardized form for a "Miner's Claim for Benefits Under The Black Lung Act." Exhibit 2, Blank Form CM-911. The applicant describes "any disability you believe you have due to pneumoconiosis (Black Lung) or

other respiratory or pulmonary disease resulting from coal mine employment." *Id.* at 1.[2] The applicant's signature certifies that is "true and correct" under penalty of fine or imprisonment. *Id.* at 3 (citing 30 U.S.C. § 941). The applicant is attesting to actual knowledge of injury.

The same is true of Kentucky's workers' compensation application for occupational disease. The claimant states that he "became affected by reason of a disease arising out of and in the course of his/her employment" and "[i]dentif[ies] the occupational disease claimed." Exhibit 3, Blank Form 102 at 1. The applicant's signature "confirm[s] the accuracy of this form to the best of your knowledge," and the form warns that knowingly false applications are a crime. *Id.* at 2. Again, the applicant actually knows he is injured.[3]

### C.    A formal medical diagnosis is not required.

Plaintiffs sometimes argue they cannot know they are injured until a doctor formally diagnoses a dust-caused lung disease and tells the plaintiff about that diagnosis. Kentucky's appellate courts disagree. "[A] formal medical diagnosis is *not required* to fulfill the notice of injury prong of the discovery rule." *Askin*, 2023 WL 4830863, at *6 (emphasis added) (affirming order granting summary judgment to defendant based on statute of limitations). A plaintiff having "knowledge of the probability of disease triggers the statute of limitations." *Carroll v. Owens-Corning Fiberglass Corp.*, 37 S.W.3d 699, 701 (Ky. 2000). A plaintiff's "lack of knowledge of the *extent* of his injury does not toll a statute of limitation to which the discovery rule is applied." *Id.* at 700 (emphasis added).

---

[2] Federal law defines "arising out of coal mine employment" to "includ[e] any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

[3] Claims for other types of benefits, such as Social Security disability, can also evidence actual knowledge of injury. Plaintiff-specific briefs will address these claims as needed.

The reason is simple. A plaintiff is charged with constructive knowledge when he is aware of sufficient "critical facts" to put him on notice, *Boggs*, 2012 WL 3644967, at *3 (collecting cases),[4] and has notice when "the fact of h[is] injury bec[omes] objectively ascertainable," *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 407 (6th Cir. 2002) (citation omitted). An injury can be objectively ascertainable long before a doctor formally diagnoses it.

Symptoms of disease can put a plaintiff on notice of injury. For example, a former college football player was on notice of his brain injury based on his history of concussions, cognitive problems, and memory loss, even though a doctor did not formally diagnose him with latent brain disease until later. *Askin*, 2023 WL 4830863, at *5–6. The Kentucky Court of Appeals rejected the suggestion that the plaintiff's claims did not accrue until he received a "competent neuropsychological and neurological diagnosis." *Id.* Rather, knowing about his symptoms should have excited the plaintiff's suspicion "that he might be suffering from a brain disease." *Id.* at *6.

The plaintiff's knowledge that exposure can cause disease works similarly. An asbestos worker "had knowledge of the probability of" developing lung cancer, sufficient for his claims to accrue, "several years *before* [he] was diagnosed with lung cancer." *Combs v. Albert Kahn Assocs., Inc.*, 183 S.W.3d 190, 197 (Ky. App. 2006) (emphasis added) (affirming summary judgment for defendants based on statute of limitations). The plaintiff knew that his occupational exposure to asbestos increased the likelihood that he might develop lung cancer. *Id.* Similarly, a plaintiff painter had notice of a lung injury after learning that toxic paint he used "could have caused his breathing problems." *Douthitt v. E.I. Dupont De Nemours & Co.*, 181 F.3d 100, 1999 WL 357795, at *2 (6th Cir. May 20, 1999) (applying Kentucky law). The Sixth Circuit rejected

---

[4] Although *Boggs* discussed this in relation to the discovery rule's second prong, the same reasoning applies to the first prong on knowledge of injury. Kentucky's discovery rule does not require actual knowledge of injury. *See Louisville Tr. Co.*, 580 S.W.2d at 501.

the contention that the claims against the paint manufacturer did not accrue until a doctor

formally diagnosed him with occupational asthma. *Id.*

### D. The limitations period does not reset as black lung progresses.

Plaintiffs also sometimes claim that progressing from simple to complicated black lung is

a new injury, effectively resetting the limitations clock. This too is incorrect.

A bit of background. Black lung sometimes progresses from a simple to a complicated

stage. Exhibit 4, Hall et al., *Current Review of Pneumoconiosis Among US Coal Miners*, 6 Curr.

Environ Health Rep. 137 (Sept. 2019).[5] Black lung is considered complicated (and is also called

progressive massive fibrosis or PMF) when a chest radiograph shows one or more opacities

larger than 1 centimeter. *Id.* But whether simple or complicated, it is all the same disease, as the

Fourth Circuit has helpfully summarized:

> CWP, known colloquially as "black lung," is a latent occupational disease marked
> by fibrosis, or scarring caused by inhalation of coal dust. It can take years of coal
> dust exposure for CWP to develop, and it progresses slowly once it occurs. The
> disease progresses through three stages of simple CWP—beginning with
> Category 1 and advancing to Category 3—followed by three stages of
> complicated CWP—beginning with Category A and ultimately becoming
> Category C.

*Adams v. Am. Optical Corp.*, 979 F.3d 248, 252 (4th Cir. 2020) (affirming summary judgment on

miner's claims against respirators based on Virginia's statute of limitations). The West Virginia

Intermediate Court of Appeals has also recognized this, finding "whether the injury is silicosis,

black lung, PMF, or CWP, it is all relatively the same and can occur the same way, which is from

exposure to coal, rock, and/or sand dust. All of the aforementioned health conditions revolve

---

[5] Researchers with the National Institute for Occupational Safety and Health wrote this paper. It is available electronically at https://pmc.ncbi.nlm.nih.gov/articles/PMC7055360/pdf/nihms-1066509.pdf.

around a lung impairment." *Hardy*, 2023 WL 7402890 (disagreeing with plaintiffs' argument that progression of CWP to PMF creates a separate, actionable injury).

*Mullins* recognized this. The simple and complicated "classifications" do not "constitute separate diseases for statute of limitations purposes," but instead show "the progressive nature of CWP." *Mullins* Order at 8. The distinction is "between two levels of severity of the same disease (black lung), not different diseases altogether." *Id.* That's why the statute of limitations did not reset in *Roark* or *Mullins*. *Id.*; *Roark*, 571 F. Supp. 3d at 713. In both cases, the plaintiffs were injured before the disease progressed.

## IV. The discovery rule requires actual or constructive knowledge of possible causation.

The discovery rule's second inquiry is when "the plaintiff discovers *or* in the exercise of reasonable diligence should have discovered . . . that his injury *may* have been caused by the defendant's conduct." *Louisville Tr. Co.*, 580 S.W.3d at 501 (emphasis added). *Boggs*, *Adams*, *Roark*, and *Mullins* are all directly on point.

### A. The plaintiff does not need definitive knowledge of causation.

A plaintiff must know only the *possibility* of causation—that his injury "*may* have been caused" by using the defendant's product. *Louisville Tr. Co.*, 580 S.W.2d at 501 (emphasis added). Here, that means that "if defective," respirators "could have caused or contributed to his inhalation-based injuries." *Mullins* Order at 11.

Plaintiffs sometimes insist the discovery rule requires "definitive knowledge of causation," but that's not the law. *Roark*, 571 F. Supp. 3d at 712 (citing *Louisville Tr.*, 580 S.W.2d at 501). The plaintiff also "need not have known precisely how much protection the Respirators provided, or were supposed to provide." *Mullins* Order at 10–11. Nor does the discovery rule consider "the date that a party 'discovers' that he or she may *sue* for a wrong." *Blanton v. Cooper*

*Indus., Inc.*, 99 F. Supp. 2d 797, 801 (E.D. Ky. 2000) (citing *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982)).

As with the discovery rule's first prong, actual or constructive knowledge is sufficient. *Id.* "Constructive knowledge, through awareness of sufficient 'critical facts' to put the plaintiff on notice, will trigger the statute of limitations period." *Id.* (quoting *Boggs*, 2012 WL 3644967, at *3). "Any fact that should excite [the plaintiff's] suspicion is the same as actual knowledge of his entire claim." *Fluke*, 306 S.W.3d at 64.

Plaintiffs often try to avoid being on notice by suggesting their injuries might have had other causes. But that argument strikes out, as *Askin* shows. The football player there believed his opioid addiction (rather than concussions sustained while playing football) caused his symptoms. But that belief was not based on a medical opinion, and "subjective beliefs about the nature of the evidence [are] not the sort of affirmative proof required to avoid summary judgment." *Askin*, 2023 WL 4830863, at *6 (quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990); *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007)).

True, sometimes a plaintiff's doctors' opinions may lead her to reasonably believe that something other than the defendant's product caused her injury. *See id.* (distinguishing *Cutter v. Ethicon, Inc.*, No. 20-6040, 2021 WL 3754245 (6th Cir. Aug. 25, 2021)). But as the Kentucky Court of Appeals recognized in *Askin*, the Sixth Circuit's non-binding decision in *Cutter* depends on that particular factual scenario—namely the "inconclusive and contradictory guidance" that several doctors gave the plaintiff about what caused the pain she experienced following pelvic-mesh surgery. *See id.*; *Cutter*, 2021 WL 3754245, at *6. The plaintiff had a "right to rely on [her] physician's knowledge and skill," and in *Cutter* the physicians never clearly identified the cause of her pain. *Id.* at *5 (quoting *Wiseman*, 37 S.W.3d at 713). *Cutter* is inapposite outside that

specific factual context. *See Askin*, 2023 WL 4830863, at *6. It certainly does not apply when, as here, the plaintiffs know that inhaling dust causes black lung and allegedly wore respirators to protect against that injury. A coal miner does not need to consult multiple doctors to learn those facts.

**B.    Coal miners who allegedly used respirators to prevent black lung, yet developed black lung, have notice of possible respirator claims.**

*Mullins*, *Roark*, *Adams*, and *Boggs* apply these principles in this precise context. Coal miners who develop black lung despite alleged respirator use have constructive knowledge of the basis for a respirator lawsuit.

In *Boggs*, the plaintiff was diagnosed with black lung in 1991 but did not sue respirator manufacturers until 2011. *Boggs*, 2012 WL 3644967, at *1–2. The plaintiff insisted the discovery rule tolled the statute of limitations because he did not *actually know* the respirators were potentially defective until his lawyer told him. *Id.* at *4. Not so. By 1991, this Court reasoned, the plaintiff knew he had worn respirators to protect himself from the injury he developed. *Id.* The plaintiff's knowledge of "[t]hese facts triggered [his] duty to investigate the possible causes of his black lung disease, including the allegedly defective respirators." *Id.* Further tolling would have allowed the plaintiff to ignore the implication of the facts he knew. *Id.* at *6.

In *Adams*, the plaintiff developed coal-related silicosis and pneumoconiosis by 1981 but did not sue respirator manufacturers until 2012. *Adams*, 2013 WL 3367134, at *1. He allegedly wore respirators to protect his lungs from coal mine dust yet still developed lung disease caused by inhaling the dust. *Id.* at *4. This Court concluded that "*[a]ny reasonable person facing these facts would at least be suspicious that the respirators he wore might not have worked as promised*." *Id.* (emphasis added). Because the plaintiff had constructive knowledge of the basis for his suit yet failed to file timely, the statute of limitations barred his case. *Id.* at *6.

14

The same result followed in *Roark*. 571 F. Supp. 3d at 714. The plaintiff allegedly used 3M "dust masks" to protect his lungs from dust, developed black lung by 1994, yet delayed his "dust mask" lawsuit until 2019. *Id.* at 710. The plaintiff had constructive knowledge of possible claims and failed to exercise reasonable diligence. *Id.* at 712–14.

So too in *Mullins*. The plaintiff knew inhaling dust could injure his lungs, so he allegedly asked his employer for respirators. *Mullins* Order at 10. He expected the respirators to prevent lung problems, and he sought workers' compensation claims based on his black lung. *Id.* "These facts were sufficient to alert [Mullins] to the potential connection between his CWP diagnosis and MSA's Respirators. *He used a product to avoid a disease, and he experienced the disease.*" *Id.* (emphasis added).

These decisions correctly apply Kentucky law. This Court should rely on them in evaluating the forthcoming summary judgment motions.

### C.    Regardless of actual or constructive knowledge, an injured plaintiff also has a duty to make a reasonably diligent investigation of his injury's cause.

Even if a plaintiff lacked actual or constructive knowledge of the basis for a respirator lawsuit, "the fact that he knew [he] had suffered an 'injury' mean[s] he ha[s] a duty to investigate and discover the identity of the [alleged] tortfeasor within the statutory time constraints." *Adams*, 2013 WL 3367134, at *4 (citing *Fluke*, 306 S.W.3d at 67). "[P]otential plaintiffs cannot simply wait for someone else to connect the dots for them." *Roark*, 571 F. Supp. 3d at 713. "If [a plaintiff] is not reasonably diligent in conducting such an investigation, the discovery rule will not toll the statute of limitations." *Id.*

This, too, is settled law. *Fluke*, for example, applied it in rejecting the plaintiffs' claim that equitable estoppel tolled the statute of limitations. The plaintiffs knew of their injury but did not investigate whether their product use might have caused it. *Fluke*, 306 S.W.3d at 65. That

ended the matter. "[S]ympathy for those injured by products through no fault of their own" cannot relieve them of "the duty to act diligently to investigate apparent possible causes of their injuries in order to pursue claims within the statute of limitations." *Id.* at 67.

This litigation frequently implicates this rule. Plaintiffs regularly testify that they wore respirators to prevent black lung, developed black lung, yet did *nothing* to investigate why they were injured (sometimes for decades) until they happened to hear about "dust mask" lawsuits or were told about their claims by a lawyer. This is "taking no action whatsoever." *Adams*, 2013 WL 3367134, at *5. And "as a matter of law," doing nothing is "failure to exercise reasonable diligence." *Adams*, 2013 WL 3367134, at *5 (citing *Blanton*, 99 F. Supp. 2d at 803); *accord Mullins* Order at 12 ("A thorough failure to act could never qualify as reasonable diligence.").

The broader context—including pendency of many similar claims and community knowledge about them—further confirms that doing nothing is unreasonable. *See Roark*, 571 F. Supp. 3d at 714 (referencing "the hundreds of other similarly-situated miners' lawsuits); *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 438–39 & n.9 (W.D. Ky. 1994) (discussing many previous lawsuits related to alleged vehicle defect and noting consultation with attorney would have allowed plaintiff to discover these defects). *Blanton* is an example. A plaintiff developed cancer after living near an industrial plant that caused water contamination. *Blanton*, 99 F. Supp. 2d at 799. "[A]llegations that exposure to chemicals from the [industrial] plant were the subject of widespread reports by local, regional, and national media." *Id.* More than 500 similarly situated plaintiffs had sued the site's owner, claiming the contamination caused cancer, and the news covered this litigation. *Id.* Despite knowing friends and relatives with contamination lawsuits, the plaintiff testified that no one "ever mentioned their lawsuits to him and that he knew nothing about the litigation or his family's or friends' involvement." *Id.* at 800.

16

This Court held the claims untimely and granted summary judgment. "With all of the information available," a "person exercising reasonable diligence would have discovered the cause of the injuries" more than one year before the plaintiff sued. *Id.* at 802.[6] This Court was dubious of the plaintiff's claimed ignorance of the surrounding context. *See id.* at 802–03 (describing that testimony as "not plausible" and "difficult to believe"). Regardless, even crediting the plaintiff's testimony, it merely "demonstrate[d] that he failed to exhibit the qualities of attention, knowledge, intelligence and judgment that society requires of its members for their protection." *Id.* at 803 (internal quotation marks and citation omitted). Turning a blind eye to the surrounding context was not reasonable diligence. *See id.*

The same is true here. Plaintiffs in this litigation know they worked around dust that can cause black lung; allegedly that is why they wore respirators. *See* Compl., DE 1-1, ¶¶ 1(c), 11, 18. For over two decades, thousands of similarly situated plaintiffs have brought lawsuits in Kentucky and in neighboring coal-mining states. *See* Exhibit 5, Summary Chart (as of 7/31/23 regarding litigation against 3M). The litigation spreads among current and former miners through word of mouth. *See* Exhibits 6, Excerpts from 9/2/15 Glen Coleman Dep. (DOWC 000050); Exhibit 7, Excerpts from 6/24/15 Russell Lewis Dep. (3M_R.Lewis 000111); Exhibit 8, Excerpts from 8/9/17 Gregory Miller Dep. (3M_G.MILLER 000174-75); Exhibit 9, Excerpts from 6/20/18 Matthew Baldridge Dep. (3M_M.BALDRDIGE 001110-12, 001124-25). It is the subject of attorney advertising. *See* Exhibit 10, Nancy Collins Advertisement; Exhibit 11, Photograph of Hamilton & Stephens Advertisement; Exhibit 12, Composite of Hammond Law Firm Facebook advertisements; Exhibit 13, Printout of results of Google search for "3M dust mask lawsuit." It

---

[6] Another plaintiff's decedent's claims were also untimely. The decedent was aware of the contamination and litigation. *Id.* at 800, 803.

has made national news. Exhibit 14, Fox Business, Jury Awards $67M to Ex-Miners Who Used Defective Dust Masks (Apr. 26, 2018).[7] As in *Blanton*, by exercising any modicum of diligence after developing black lung—doing a Google search, calling an attorney, speaking with friends or co-workers, paying attention to the news, anything—a plaintiff who allegedly wore respirators to prevent black lung can bring a timely lawsuit.

## V.    Plaintiffs bear the burden on any tolling doctrines they raise.

Plaintiffs may assert other tolling doctrines besides the discovery rule. But "[o]nce the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute . . . ." *Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988). Plaintiffs have the burden, and Defendants' response will address whichever doctrines they may say are relevant.

That said, if Plaintiffs invoke fraudulent concealment or equitable estoppel, these doctrines require the plaintiff to show that the defendant's alleged actions prevented the plaintiff from bringing a timely suit. *See Mullins* Order at 12 n.4 (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004)); *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952); *Boggs*, 2012 WL 3644967, at *6 (quoting *Fluke*, 306 S.W.3d at 62–66; *Moody v. Cooper Indus., Inc.*, No. 03-158-JBC, 2006 WL 1207703, at *3–4 (E.D. Ky. May 3, 2006); *Cabinet for Health & Fam. Services v. Batie*, 645 S.W.3d 452, 469–70 (Ky. App. 2022).[8]

Defendants do not expect the evidence will show support that extraordinary showing. *See Goodwin*, 2024 WL 5202119, at *13 (rejecting assertion of fraudulent concealment under West

---

[7] This article is also available online at https://www.foxbusiness.com/markets/jury-awards-67m-to-ex-miners-who-used-defective-dust-masks.

[8] Defendants deny fraudulently concealing anything or making misrepresentations on which either doctrine could ever rest.

Virginia law because "there is no evidence to support a finding that [defendants] fraudulently concealed facts which prevented any [plaintiff] from pursuing his cause of action"). After all, each Plaintiff allegedly "used a product to avoid a disease" yet "experienced the disease." *Mullins* Order at 10. "Mask efficacy was a plain area for evaluation, suspicion, and scrutiny," *id.*, regardless of whatever Plaintiffs may claim Defendants allegedly did or did not disclose.

## VI.    The discovery rule does not apply to Plaintiffs' fraud and warranty claims.

Plaintiffs also claim fraud and breach of warranty. Compl., DE 1-1 ¶¶ 32–46. If considered separately from the personal injury claims, "[t]ypically, no discovery rule would apply to such theories." *Mullins* Order at 12 n.5 (citing *Winkler v. Bos. Sci. Corp.*, No. CV 5:17-274-KKC, 2018 WL 1474067, at *3 (E.D. Ky. Mar. 26, 2018); KRS 413.130(3)). If characterized as personal-injury claims, the one-year statute of limitations would apply. *See Askin*, 2023 WL 4830863, at *7 (holding that circuit court correctly applied one-year statute of limitations to plaintiff's fraud claim because "the real object of his action was to recover damages for personal injury, not for some other injury stemming purely from the purported fraud") (citing *Carr v. Tex. E. Transmission Corp.*, 344 S.W.2d 619, 620 (Ky. 1961)).

The fraud claim is further subject to a ten-year statute of repose. KRS 413.130(3). A statute of repose "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Parton v. Parton*, No. 6:22-cv-00018-GFVT, 2022 WL 2292984, at *3 (E.D. Ky. June 24, 2022) (citation omitted). Accordingly, KRS 413.130(3) "imposes an absolute bar to actions for fraud commenced more than ten years after the [alleged] perpetration of the fraudulent act." *Fed. Ins. Co. v. Woods (In re Woods)*, 558 B.R. 164, 172 (Bankr. W.D. Ky. 2016). "[T]he statute of repose is not subject to equitable tolling" or the discovery rule. *Eitel v. PNC Bank, N.A.*, No. 3:20-cv-12-RGJ, 2023 WL 2230866, at *13 (W.D. Ky. Feb. 24, 2023) (citing *Hernandez v. Daniel*, 471 S.W.2d 25 (Ky. 1971)); *see also Tew*

*v. MCML Ltd.*, 751 F. Supp. 3d 733, 753–54 (E.D. Ky. 2024) (recognizing that

"[n]otwithstanding [the] singular example" of a 1948 case involving a fiduciary relationship,

"more recent Kentucky authority counsels against equitable tolling for statutes of repose").

"Thus, a fraud claim must be brought within 10 years of the supposed fraud 'even if Plaintiffs

never discovered the fraud.'" *Eitel*, 2023 WL 2230866 (alteration omitted) (quoting *Bowden*

*v. City of Franklin*, 13 F. App'x 266, 275 (6th Cir. 2001)).

If a Plaintiff last allegedly used a Defendant's respirator more than 10 years before he

filed suit, the statute of repose bars the fraud claim.

## CONCLUSION

This Court correctly analyzed the limitations issues in *Boggs*, *Adams*, *Roark*, and *Mullins*.

Defendants expect that most, if not nearly all, Plaintiffs' claims will be untimely for the same

reasons.

Respectfully submitted,

THOMPSON MILLER & SIMPSON PLC


*/s/ Michael J. Bender*
Byron N. Miller
Michael J. Bender
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

And

Bryant J. Spann
Robert H. Akers

20

THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charleston, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
bspann@tcspllc.com
rakers@tcspllc.com
jbrowne@tcspllc.com
lgibson@tcspllc.com

And

J. William Manuel (pro hac vice)
James Stephen Fritz, Jr. (pro hac vice)
Jason D. Tullos (pro hac vice)
BRADLEY ARANT BOULT CUMMINGS LLP
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
wmanuel@bradley.com
sfritz@bradley.com
jtullos@bradley.com

And

Stephen G.A. Myers (pro hac vice)
IRWIN FRITCHIE URQUHART
MOORE & DANIELS LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
smyers@irwinllc.com
*Counsel for Defendant 3M Company*

*/s/ Carol Dan Browning (by MJB with permission)*
Carol Dan Browning
Whitney Fraizer Watt
Emily L. Startsman
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
cbrowning@stites.com

wwatt@stites.com
estartsman@stites.com
*Counsel for Defendants American Optical Corporation, Cabot CSC Corporation, Cabot Corporation, Aearo Technologies, LLC, and Aearo, LLC*


*/s/ John Budig (by MJB with permission)*
Nicholas Johnson
John A. Budig
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
njohnson@baileyglasser.com
jbudig@baileyglasser.com
mdennis@baileyglasser.com

Charles J. Baird
Daivd L. Baird
Baird & Baird, PSC
162 Second Street
P.O. Box 351
Pikeville, KY 41502
cbaird@bairdandbaird.com
dbaird@bairdandbaird.com
bmoore@bairdandbaird.com

M. Trent Spurlock
Dinsmore & Shohl, LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Trent.spurlock@dinsmore.com
Brenda.goodhue@dinsmore.com
*Counsel for Defendant Mine Respirator Company, LLC (f/k/a Mine Safety Appliances Company, LLC)*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served and/or mailed this 30th day of October 2025:

| | |
|---|---|
| Joseph E.H. Atkinson<br>Whiteford, Taylor & Preston, LLP<br>1021 E. Cary Street, Suite 2001<br>Richmond, VA 23219<br>jeatkinson@whitefordlaw.com<br>cwagner@whitefordlaw.com<br>*Counsel for the WTP Plaintiffs* | Masten Childers, III<br>Aaron M. Oppegard<br>Sarah E. Cooley<br>Madeleine R. Hamlin<br>Daniel Gaus<br>Whiteford, Taylor & Preston, LLP<br>161 N. Eagle Creek Drive, Suite 210<br>Lexington, KY 40509<br>mchilders@whitefordlaw.com<br>aoppegard@whitefordlaw.com<br>scooley@whitefordlaw.com<br>mhamlin@whitefordlaw.com<br>dgaus@whitefordlaw.com<br>*Counsel for the WTP Plaintiffs* |
| Justin S. Peterson<br>Kellie M. Collins<br>Peterson Law Office, PLLC<br>2424 Harrodsburg Road, Suite 205<br>Lexington, KY 40503<br>justin@justinpetersonlaw.com<br>kellie@justinpetersonlaw.com<br>jennifer@justinpetersonlaw.com<br>Laura@justinpetersonlaw.com<br>dmteam@justinpetersonlaw.com<br>*Counsel for the WTP Plaintiffs* | Michael B. Martin<br>Martin Walton Law Firm<br>699 S. Friendswood Drive, Suite 106<br>Houston, TX 77546-4580<br>mmartin@martinwaltonlaw.com<br>beth@martinwaltonlaw.com<br>tiffany@martinwaltonlaw.com<br>*Counsel for Plaintiffs Tim and Francis Balthis, Patricia Blair, Individually, and as Executrix of the Estate of Roger Blair, Colin and Jamie Cook, Brian and Nikki Dotson, Brandon and Jessica Fleming, Benjamin and Alivia Perry, Dennie and Mary Pugh, Robert and Celesta Pugh, and Roger and Betty Staton* |
| Johnny Givens<br>Givens Law Firm, PLLC<br>240 Trace Colony Park Drive, Suite 100<br>Ridgeland, MS 39157<br>johnny@givens-law.com<br>jeanreid@givens-law.com<br>*Counsel for Plaintiffs Tim and Francis Balthis, Patricia Blair, Individually, and as Executrix of the Estate of Roger Blair, Colin and Jamie Cook, Brian and Nikki Dotson, Brandon and Jessica Fleming, Benjamin and Alivia Perry, Dennie and Mary Pugh, Robert and Celesta Pugh, and Roger and Betty Staton* | James Hamilton<br>Jonah L. Stevens<br>Destiny S. Hamilton<br>Hamilton & Stevens, PLLC<br>P.O. Box 1286<br>Pikeville, KY 41502<br>james@hamiltonstevenslaw.com<br>jonah@hamiltonstevenslaw.com<br>destiny@hamiltonstevneslaw.com<br>shanna@hamiltonstevenslaw.com<br>hamiltonstevens@hamiltonstevenslaw.com<br>*Counsel for Plaintiffs Tim and Francis Balthis, Patricia Blair, Individually, and as Executrix of the Estate of Roger Blair, Colin and Jamie Cook, Brian and Nikki Dotson, Brandon and Jessica Fleming, Benjamin and Alivia Perry,* |

| | |
|---|---|
| | *Dennie and Mary Pugh, Robert and Celesta Pugh, and Roger and Betty Staton* |
| Robert M. Connolly<br>Carol Dan Browning<br>Whitney Frazier Watt<br>Emily L. Startsman<br>Stites & Harbison, PLLC<br>400 West Market Street, Suite 1800<br>Louisville, KY 40202<br>rconnolly@stites.com<br>cbrowning@stites.com<br>wwatt@stites.com<br>estartsman@stites.com<br>*Counsel for Defendants American Optical Corporation, Cabot CSC Corporation, and Aearo Technologies, LLC* | Nicholas Johnson<br>John A. Budig<br>Bailey & Glasser LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>njohnson@baileyglasser.com<br>jbudig@baileyglasser.com<br>mdennis@baileyglasser.com<br>*Counsel for Defendant Mine Respirator Company, LLC (f/k/a Mine Safety Appliances Company, LLC)* |
| Charles J. Baird<br>David L. Baird<br>Baird & Baird, PSC<br>162 Second Street<br>P.O. Box 351<br>Pikeville, KY 41502<br>cbaird@bairdandbaird.com<br>dbaird@bairdandbaird.com<br>bmoore@bairdandbaird.com<br>*Counsel for Defendant Mine Respirator Company, LLC (f/k/a Mine Safety Appliances Company, LLC)* | M. Trent Spurlock<br>Dinsmore & Shohl, LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Trent.Spurlock@Dinsmore.com<br>Brenda.Goodhue@Dinsmore.com<br>*Counsel for Defendant Mine Respirator Company, LLC (f/k/a Mine Safety Appliances Company, LLC)* |
| William English<br>Napier Gault Schupbach & Stevens PLC<br>730 West Main Street, Suite 400<br>Louisville, KY 40202<br>wenglish@napiergaultlaw.com<br>abury@napiergaultlaw.com<br>*Counsel for Defendants Mine Service Company, Inc. and Kentucky Mine Supply Company* | |

/s/ Michael J. Bender
*Counsel for Defendant 3M Company*